FARRAR ET AL., COADMINISTRATORS OF ESTATE
OF FARRAR, DECEASED *v.* HOBBY

No. 91–990.   Argued October 7, 1992—Decided December 14, 1992

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined. O'CONNOR, J., filed a concurring opinion, *post*, p. 116. WHITE, J., filed an opinion concurring in part and dissenting in part, in which BLACKMUN, STEVENS, and SOUTER, JJ., joined, *post*, p. 122.

*Gerald M. Birnberg* argued the cause for petitioners. With him on the brief were *Michael A. Maness* and *Waggoner Carr.*

*Finis E. Cowan* argued the cause for respondent. With him on the brief were *Dan Morales,* Attorney General of Texas, *Will Pryor,* First Assistant Attorney General, and *Thomas Gibbs Gee.**

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *Warren Price III,* Attorney General of Hawaii, and *Steven S. Michaels,* Deputy Attorney General, *Frankie Sue Del Papa,* Attorney General of Nevada, and *Brooke Nielsen,* Assistant Attorney General, *Jimmy Evans,* Attorney General of Alabama, *Charles E. Cole,* Attorney General of Alaska, *Winston Bryant,* Attorney General of Arkansas, *Daniel E. Lungren,* Attorney General of California, *Richard Blumenthal,* Attorney General of Connecticut, *Charles M. Oberly III,* Attorney General of Delaware, *Robert A. Butterworth,* Attorney General of Florida, *Michael J. Bowers,* Attorney General of Georgia, *Larry EchoHawk,* Attorney General of Idaho, *Roland W. Burris,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *Bonnie J. Campbell,* Attorney General of Iowa, *Robert T. Stephan,* Attorney General of Kansas, *Chris Gorman,* Attorney General of Kentucky, *Richard P. Ieyoub,* Attorney General of Louisiana, *Michael E. Carpenter,* Attorney General of Maine, *J. Joseph Curran, Jr.,* Attorney General of Maryland, *Scott Harshbarger,* Attorney General of Massachusetts, *Frank J. Kelley,* Attorney General of Michigan, *Hubert H. Humphrey III,* Attorney General of Minnesota, *Mike Moore,* Attorney General of Mississippi, *William L. Webster,* Attorney General of Missouri, *Don Stenberg,* Attorney General of Nebraska, *John P. Arnold,*

Justice Thomas delivered the opinion of the Court.

We decide today whether a civil rights plaintiff who receives a nominal damages award is a "prevailing party" eligible to receive attorney's fees under 42 U. S. C. § 1988. The Court of Appeals for the Fifth Circuit reversed an award of attorney's fees on the ground that a plaintiff receiving only nominal damages is not a prevailing party. Although we hold that such a plaintiff is a prevailing party, we affirm the denial of fees in this case.

I

Joseph Davis Farrar and Dale Lawson Farrar owned and operated Artesia Hall, a school in Liberty County, Texas, for delinquent, disabled, and disturbed teens. After an Artesia Hall student died in 1973, a Liberty County grand jury returned a murder indictment charging Joseph Farrar with willful failure to administer proper medical treatment and

Attorney General of New Hampshire, *Robert J. Del Tufo,* Attorney General of New Jersey, *Lacy H. Thornburg,* Attorney General of North Carolina, *Nicholas J. Spaeth,* Attorney General of North Dakota, *Lee Fisher,* Attorney General of Ohio, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *James E. O'Neil,* Attorney General of Rhode Island, *T. Travis Medlock,* Attorney General of South Carolina, *Mark Barnett,* Attorney General of South Dakota, *Charles W. Burson,* Attorney General of Tennessee, *Paul Van Dam,* Attorney General of Utah, *Jeffrey L. Amestoy,* Attorney General of Vermont, *Mary Sue Terry,* Attorney General of Virginia, *Ken Eikenberry,* Attorney General of Washington, *Joseph B. Meyer,* Attorney General of Wyoming, *Jorge Perez-Diaz,* Attorney General of Puerto Rico, *Elizabeth Barrett-Anderson,* Attorney General of Guam, and *John Payton,* Corporation Counsel of the District of Columbia; for the County of Los Angeles by *Richard P. Towne, De Witt W. Clinton,* and *Patrick T. Meyers;* for Americans for Effective Law Enforcement, Inc., et al. by *George J. Franscell* and *Wayne W. Schmidt;* for the Equal Employment Advisory Council by *Ann Elizabeth Reesman, Robert E. Williams,* and *Douglas S. McDowell;* for the National League of Cities et al. by *Richard Ruda, Michael G. Dzialo,* and *Glen D. Nager;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo* and *Richard A. Samp.*

*Talbot S. D'Alemberte, Eric B. Schnurer,* and *Carter G. Phillips* filed a brief for the American Bar Association as *amicus curiae.*

failure to provide timely hospitalization. The State of Texas also obtained a temporary injunction that closed Artesia Hall.

Respondent William P. Hobby, Jr., then Lieutenant Governor of Texas, participated in the events leading to the closing of Artesia Hall. After Joseph Farrar was indicted, Hobby issued a press release criticizing the Texas Department of Public Welfare and its licensing procedures. He urged the department's director to investigate Artesia Hall and accompanied Governor Dolph Briscoe on an inspection of the school. Finally, he attended the temporary injunction hearing with Briscoe and spoke to reporters after the hearing.

Joseph Farrar sued Hobby, Judge Clarence D. Cain, County Attorney Arthur J. Hartell III, and the director and two employees of the Department of Public Welfare for monetary and injunctive relief under 42 U. S. C. §§ 1983 and 1985. The complaint alleged deprivation of liberty and property without due process by means of conspiracy and malicious prosecution aimed at closing Artesia Hall. Later amendments to the complaint added Dale Farrar as a plaintiff, dropped the claim for injunctive relief, and increased the request for damages to $17 million. After Joseph Farrar died on February 20, 1983, petitioners Dale Farrar and Pat Smith, coadministrators of his estate, were substituted as plaintiffs.

The case was tried before a jury in the Southern District of Texas on August 15, 1983. Through special interrogatories, the jury found that all of the defendants except Hobby had conspired against the plaintiffs but that this conspiracy was not a proximate cause of any injury suffered by the plaintiffs. The jury also found that Hobby had "committed an act or acts under color of state law that deprived Plaintiff Joseph Davis Farrar of a civil right," but it found that Hobby's conduct was not "a proximate cause of any damages" suffered by Joseph Farrar. App. to Brief in Opposition A–3. The jury made no findings in favor of Dale Farrar. In accordance with the jury's answers to the special interrogato-

ries, the District Court ordered that "Plaintiffs take nothing, that the action be dismissed on the merits, and that the parties bear their own costs." *Id.*, at A–6.

The Court of Appeals for the Fifth Circuit affirmed in part and reversed in part. *Farrar* v. *Cain,* 756 F. 2d 1148 (1985). The court affirmed the failure to award compensatory or nominal damages against the conspirators because the plaintiffs had not proved an actual deprivation of a constitutional right. *Id.*, at 1151–1152. Because the jury found that Hobby had deprived Joseph Farrar of a civil right, however, the Fifth Circuit remanded for entry of judgment against Hobby for nominal damages. *Id.*, at 1152.

The plaintiffs then sought attorney's fees under 42 U. S. C. § 1988. On January 30, 1987, the District Court entered an order awarding the plaintiffs $280,000 in fees, $27,932 in expenses, and $9,730 in prejudgment interest against Hobby. The court denied Hobby's motion to reconsider the fee award on August 31, 1990.

A divided Fifth Circuit panel reversed the fee award. *Estate of Farrar* v. *Cain,* 941 F. 2d 1311 (1991). After reviewing our decisions in *Hewitt* v. *Helms,* 482 U. S. 755 (1987), *Rhodes* v. *Stewart,* 488 U. S. 1 (1988) *(per curiam),* and *Texas State Teachers Assn.* v. *Garland Independent School Dist.,* 489 U. S. 782 (1989), the majority held that the plaintiffs were not prevailing parties and were therefore ineligible for fees under § 1988:

> "The Farrars sued for $17 million in money damages; the jury gave them nothing. No money damages. No declaratory relief. No injunctive relief. Nothing. . . . [T]he Farrars did succeed in securing a jury-finding that Hobby violated their civil rights and a nominal award of one dollar. However, this finding did not in any meaningful sense 'change the legal relationship' between the Farrars and Hobby. Nor was the result a success for the Farrars on a 'significant issue that achieve[d] some of the benefit the [Farrars] sought in bringing suit.'

When the sole relief sought is money damages, we fail to see how a party 'prevails' by winning one dollar out of the $17 million requested." 941 F. 2d, at 1315 (citations omitted) (quoting *Garland, supra,* at 791–792).[1]

The majority reasoned that even if an award of nominal damages represented some sort of victory, "surely [the Farrars'] was 'a technical victory . . . so insignificant and . . . so near the situations addressed in *Hewitt* and *Rhodes,* as to be insufficient to support prevailing party status.'" 941 F. 2d, at 1315 (quoting *Garland, supra,* at 792).[2]

The dissent argued that *"Hewitt, Rhodes* and *Garland* [do not] go so far" as to hold that "where plaintiff obtains only

---

[1] Although the Fifth Circuit's original opinion on liability made clear that Joseph Farrar alone was to receive nominal damages for violation of his due process rights, *Farrar* v. *Cain,* 756 F. 2d 1148, 1152 (1985), the District Court on remand awarded attorney's fees not only to petitioners as coadministrators of Joseph Farrar's estate but also to Dale Farrar in his personal capacity, see App. to Pet. for Cert. A–12. The Fifth Circuit reversed Dale Farrar's fee award on the apparent assumption that he too had received nominal damages. Dale Farrar has not petitioned from the Fifth Circuit's judgment in his personal capacity, and the only issue before us is the award of attorney's fees to Dale Farrar and Pat Smith as coadministrators of Joseph Farrar's estate.

[2] The majority acknowledged its conflict with the Courts of Appeals for the Second, Eighth, Ninth, Tenth, and Eleventh Circuits. 941 F. 2d, at 1316–1317, and nn. 22 and 26. See *Ruggiero* v. *Krzeminski,* 928 F. 2d 558, 564 (CA2 1991); *Coleman* v. *Turner,* 838 F. 2d 1004, 1005 (CA8 1988); *Scofield* v. *Hillsborough,* 862 F. 2d 759, 766 (CA9 1988); *Nephew* v. *Aurora,* 830 F. 2d 1547, 1553, n. 2 (CA10 1987) (en banc) (Barrett, J., dissenting), cert. denied, 485 U. S. 976 (1988); *Garner* v. *Wal-Mart Stores, Inc.,* 807 F. 2d 1536, 1539 (CA11 1987). After the Fifth Circuit decided this case, the First and Ninth Circuits rejected the Fifth Circuit's position and held that a nominal damages award does confer prevailing party status on a civil rights plaintiff. *Domegan* v. *Ponte,* 972 F. 2d 401, 410 (CA1 1992); *Romberg* v. *Nichols,* 970 F. 2d 512, 519–520 (CA9 1992), cert. pending, No. 92–402; 970 F. 2d, at 525–526 (Wallace, C. J., concurring). The Fourth Circuit has adopted a position consistent with the Fifth Circuit's. *Lawrence* v. *Hinton,* 20 Fed. Rules Serv. 3d 934, 936–937 (1991); *Spencer* v. *General Elec. Co.,* 894 F. 2d 651, 662 (1990) (dicta).

nominal damages for his constitutional deprivation, he cannot be considered the prevailing party." 941 F. 2d, at 1317 (Reavley, J., dissenting).

We granted certiorari. 502 U. S. 1090 (1992).

## II

The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, as amended, 42 U. S. C. § 1988, provides in relevant part:

> "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 . . . , or title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

"Congress intended to permit the . . . award of counsel fees only when a party has prevailed on the merits." *Hanrahan* v. *Hampton,* 446 U. S. 754, 758 (1980) *(per curiam).* Therefore, in order to qualify for attorney's fees under § 1988, a plaintiff must be a "prevailing party." Under our "generous formulation" of the term, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley* v. *Eckerhart,* 461 U. S. 424, 433 (1983) (quoting *Nadeau* v. *Helgemoe,* 581 F. 2d 275, 278–279 (CA1 1978)). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky* v. *Graham,* 473 U. S. 159, 165 (1985).

We have elaborated on the definition of prevailing party in three recent cases. In *Hewitt* v. *Helms,* 482 U. S. 755 (1987), we addressed "the peculiar-sounding question whether a party who litigates to judgment and loses on all of his claims

can nonetheless be a 'prevailing party.' " *Id.*, at 757. In his § 1983 action against state prison officials for alleged due process violations, respondent Helms obtained no relief. "The most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim." *Id.*, at 760. Observing that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail," we held that Helms was not a prevailing party. *Ibid.* We required the plaintiff to prove "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Id.*, at 761 (emphasis omitted).

In *Rhodes* v. *Stewart*, 488 U. S. 1 (1988) *(per curiam)*, we reversed an award of attorney's fees premised solely on a declaratory judgment that prison officials had violated the plaintiffs' First and Fourteenth Amendment rights. By the time the District Court entered judgment, "one of the plaintiffs had died and the other was no longer in custody." *Id.*, at 2. Under these circumstances, we held, neither plaintiff was a prevailing party. We explained that "nothing in *[Hewitt]* suggested that the entry of [a declaratory] judgment in a party's favor automatically renders that party prevailing under § 1988." *Id.*, at 3. We reaffirmed that a judgment—declaratory or otherwise—"will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." *Id.*, at 4. Whatever "modification of prison policies" the declaratory judgment might have effected "could not in any way have benefited either plaintiff, one of whom was dead and the other released." *Ibid.*[3]

---

[3] Similarly, the plaintiff in *Hewitt* v. *Helms*, 482 U. S. 755, 763 (1987), "had long since been released from prison" by the time his failed lawsuit putatively prompted beneficial changes in prison policy. We held that the "fortuity" of a subsequent return to prison, which presumably allowed the plaintiff to benefit from the new procedures, could "hardly render him,

Finally, in *Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782 (1989), we synthesized the teachings of *Hewitt* and *Rhodes.* "[T]o be considered a prevailing party within the meaning of § 1988," we held, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 489 U. S., at 792. We reemphasized that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id.,* at 792–793. Under this test, the plaintiffs in *Garland* were prevailing parties because they "obtained a judgment vindicating [their] First Amendment rights [as] public employees" and "materially altered the [defendant] school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities." *Id.,* at 793.

Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt, supra,* at 760, or comparable relief through a consent decree or settlement, *Maher* v. *Gagne,* 448 U. S. 122, 129 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. See *Hewitt, supra,* at 764. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes, supra,* at 4. Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. *Garland, supra,* at 792–793. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the

retroactively, a 'prevailing party' . . . , even though he was not such when the final judgment was entered." *Id.,* at 764.

defendant's behavior in a way that directly benefits the plaintiff.

### III

### A

Doubtless "the basic purpose of a §1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey* v. *Piphus,* 435 U. S. 247, 254 (1978). For this reason, no compensatory damages may be awarded in a §1983 suit absent proof of actual injury. *Id.,* at 264. Accord, *Memphis Community School Dist.* v. *Stachura,* 477 U. S. 299, 307, 308, n. 11 (1986). We have also held, however, that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey, supra,* at 266. The awarding of nominal damages for the "absolute" right to procedural due process "recognizes the importance to organized society that [this] righ[t] be scrupulously observed" while "remain[ing] true to the principle that substantial damages should be awarded only to compensate actual injury." 435 U. S., at 266. Thus, *Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury.

We therefore hold that a plaintiff who wins nominal damages is a prevailing party under §1988. When a court awards nominal damages, it neither enters judgment for defendant on the merits nor declares the defendant's legal immunity to suit. Cf. *Kentucky* v. *Graham,* 473 U. S., at 165; *Supreme Court of Va.* v. *Consumers Union of United States, Inc.,* 446 U. S. 719, 738 (1980). To be sure, a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status.

*Hewitt,* 482 U. S., at 762. No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant. A plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay. As a result, the Court of Appeals for the Fifth Circuit erred in holding that petitioners' nominal damages award failed to render them prevailing parties.

We have previously stated that "a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." *Garland,* 489 U. S., at 792.[4] The example chosen in *Garland* to illustrate this sort of "technical" victory, however, would fail to support prevailing party status under the test we adopt today. In that case, the District Court declared unconstitutionally vague a regulation requiring that "nonschool hour meetings be conducted only with prior approval from the local school principal." *Ibid.* We suggested that this finding alone would not sustain prevailing party status if there were " 'no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours.' " *Ibid.* The deficiency in such a hypothetical "victory" is identical to the shortcoming in *Rhodes.* Despite winning a declaratory judgment, the plaintiffs could not alter the defendant school board's behavior toward them for their benefit. Now that we are confronted with the question whether a nominal damages award is the sort of "technical," "insignificant" victory that cannot confer

---

[4] We did not consider whether the plaintiffs in *Garland* could be denied prevailing party status on this basis, because "[t]hey prevailed on a significant issue in the litigation and . . . obtained some of the relief they sought." 489 U. S., at 793.

prevailing party status, we hold that the prevailing party inquiry does not turn on the magnitude of the relief obtained. We recognized as much in *Garland* when we noted that "the *degree* of the plaintiff's success" does not affect "eligibility for a fee award." 489 U. S., at 790 (emphasis in original). See also *id.*, at 793.

B

Although the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983). *Garland, supra,* at 793. Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley, supra,* at 436. Accord, *Marek* v. *Chesny,* 473 U. S. 1, 11 (1985). In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought. This litigation accomplished little beyond giving petitioners "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated" in some unspecified way. *Hewitt, supra,* at 762. We have already observed that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley, supra,* at 436. Yet the District Court calculated petitioners' fee award in precisely this fashion, without engaging in any measured exercise of discretion. "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside* v. *Rivera,* 477 U. S. 561, 585 (1986) (Powell, J., concurring in judgment). Such a comparison promotes the

court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard* v. *Bergeron*, 489 U. S. 87, 96 (1989). Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see *Hensley*, 461 U. S., at 430, n. 3, or multiplying "the number of hours reasonably expended ... by a reasonable hourly rate," *id.*, at 433.

In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant. *Carey*, 435 U. S., at 266. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. *Id.*, at 254–264. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.'" *Memphis Community School Dist.* v. *Stachura*, 477 U. S., at 309 (quoting *Carey, supra,* at 265) (emphasis and brackets in original). When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, see *Carey, supra,* at 256–257, 264, the only reasonable fee is usually no fee at all. In an apparent failure to heed our admonition that fee awards under § 1988 were never intended to "'produce windfalls to attorneys,'" *Riverside* v. *Rivera, supra,* at 580 (plurality opinion) (quoting S. Rep. No. 94–1011, p. 6 (1976)), the District Court awarded $280,000 in attorney's fees without "consider[ing] the relationship between

the extent of success and the amount of the fee award."
*Hensley, supra,* at 438.

Although the Court of Appeals erred in failing to recognize that petitioners were prevailing parties, it correctly reversed the District Court's fee award. We accordingly affirm the judgment of the Court of Appeals.

*So ordered.*

JUSTICE O'CONNOR, concurring.

If ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar. He filed a lawsuit demanding 17 million dollars from six defendants. After 10 years of litigation and two trips to the Court of Appeals, he got one dollar from one defendant. As the Court holds today, that is simply not the type of victory that merits an award of attorney's fees. Accordingly, I join the Court's opinion and concur in its judgment. I write separately only to explain more fully why, in my view, it is appropriate to deny fees in this case.

I

Congress has authorized the federal courts to award "a reasonable attorney's fee" in certain civil rights cases, but only to "the prevailing party." 42 U. S. C. § 1988; *Texas State Teachers Assn.* v. *Garland Independent School Dist.,* 489 U. S. 782, 789 (1989). To become a prevailing party, a plaintiff must obtain, at an absolute minimum, "actual relief on the merits of [the] claim," *ante,* at 111, which "affects the behavior of the defendant towards the plaintiff," *Hewitt* v. *Helms,* 482 U. S. 755, 761 (1987) (emphasis omitted); accord, *ante,* at 111–112 (relief obtained must "alte[r] the legal relationship between the parties" and "modif[y] the defendant's behavior in a way that directly benefits the plaintiff"). Joseph Farrar met that minimum condition for prevailing party status. Through this lawsuit, he obtained an enforceable judgment for one dollar in nominal damages. One dollar is not exactly a bonanza, but it constitutes relief on the merits.

And it affects the defendant's behavior toward the plaintiff, if only by forcing him to pay one dollar—something he would not otherwise have done. *Ante*, at 113.

Nonetheless, *Garland* explicitly states that an enforceable judgment alone is not always enough: "Beyond th[e] absolute limitation [of some relief on the merits], a technical victory may be so insignificant . . . as to be insufficient" to support an award of attorney's fees. 489 U. S., at 792. While *Garland* may be read as indicating that this *de minimis* or technical victory exclusion is a second barrier to prevailing party status, the Court makes clear today that, in fact, it is part of the determination of what constitutes a reasonable fee. Compare *ibid.* (purely technical or *de minimis* victories are "insufficient to support prevailing party status") with *ante*, at 114 (the "'technical'" nature of the victory "does not affect the prevailing party inquiry" but instead "bear[s] on the propriety of fees awarded under § 1988"). And even if the exclusion's location is debatable, its effect is not: When the plaintiff's success is purely technical or *de minimis*, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero. The Court's opinion today and its unanimous opinion in *Garland* are thus in accord. See *ante*, at 115 (merely "forma[l]" victory can yield "no attorney's fees at all"); *Garland, supra*, at 792 ("Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that" denial of attorney's fees is appropriate).

Consequently, the Court properly holds that, when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees. *Ante*, at 114–115 (court need not calculate presumptive fee by determining the number of hours reasonably expended and multiplying it by the reasonable hourly rate; nor must it apply the 12 factors bearing on reasonableness). As a matter of common sense and sound

judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimis* nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to "award low fees or no fees" at all. *Ante,* at 115.

Precedent confirms what common sense suggests. It goes without saying that, if the *de minimis* exclusion were to prevent the plaintiff from obtaining prevailing party status, fees would have to be denied. *Supra,* at 116. And if the *de minimis* victory exclusion is in fact part of the reasonableness inquiry, see *ante,* at 114, summary denial of fees is still appropriate. We have explained that even the prevailing plaintiff may be denied fees if " 'special circumstances would render [the] award unjust.' " *Hensley* v. *Eckerhart,* 461 U. S. 424, 429 (1983) (citations omitted). While that exception to fee awards has often been articulated separately from the reasonableness inquiry, sometimes it is bound up with reasonableness: It serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all. After all, where *the only* reasonable fee is no fee, an award of fees would be unjust; conversely, where a fee award would be unjust, the reasonable fee is no fee at all.

Of course, no matter how much sense this approach makes, it would be wholly inappropriate to adopt it if Congress had declared a contrary intent. When construing a statute, this Court is bound by the choices Congress has made, not the choices we might wish it had made. Felicitously, here they are one and the same. Section 1988 was enacted for a specific purpose: to restore the former equitable practice of awarding attorney's fees to the prevailing party in certain civil rights cases, a practice this Court had disapproved in *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240 (1975). *Hensley, supra,* at 429; see S. Rep. No. 94–1011,

p. 6 (1976) ("This bill creates no startling new remedy—it only meets the technical requirements that the Supreme Court has laid down if the Federal courts are to continue the practice of awarding attorneys' fees which had been going on for years prior to the Court's *[Alyeska]* decision"). That practice included the denial of fees to plaintiffs who, although technically prevailing parties, had achieved only *de minimis* success. See, *e. g., Tatum* v. *Morton,* 386 F. Supp. 1308, 1317–1319 (DC 1974) (fees denied where plaintiffs recovered $100 each); see also *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375, 392, 396 (1970) (under judge-made fee-shifting rule for shareholder actions that benefit the corporation, no fees are available if the only benefit achieved is merely "'technical in its consequence'" (quoting *Bosch* v. *Meeker Cooperative Light & Power Assn.,* 257 Minn. 362, 366, 367, 101 N. W. 2d 423, 426, 427 (1960))); cf. *Ruckelshaus* v. *Sierra Club,* 463 U. S. 680, 688, n. 9 (1983) ("[W]e do not mean to suggest that trivial success on the merits, or purely procedural victories, would justify an award of fees under statutes setting out the 'when appropriate' standard"). And although Congress did not intend to restore every detail of pre-*Alyeska* practice, see *West Virginia Univ. Hospitals, Inc.* v. *Casey,* 499 U. S. 83, 97–98 (1991), the practice of denying fees to Pyrrhic victors is one it clearly intended to preserve. Section 1988 expressly grants district courts discretion to withhold attorney's fees from prevailing parties in appropriate circumstances: It states that a court "may" award fees "in its discretion." 42 U. S. C. § 1988. As under pre-*Alyeska* practice, the occurrence of a purely technical or *de minimis* victory is such a circumstance. Chimerical accomplishments are simply not the kind of legal change that Congress sought to promote in the fee statute.

Indeed, § 1988 contemplates the denial of fees to *de minimis* victors through yet another mechanism. The statute only authorizes courts to award fees "as part of the costs." 42 U. S. C. § 1988. As a result, when a court denies costs, it

must deny fees as well; if there are no costs, there is nothing for the fees to be awarded "as part of." And when Congress enacted § 1988, the courts would deny even a prevailing party costs under Federal Rule of Civil Procedure 54(d) where the victory was purely technical. *Lewis* v. *Pennington,* 400 F. 2d 806, 819 (CA6) ("'prevailing party is prima facie entitled to costs'" unless "'the judgment recovered was insignificant in comparison to the amount actually sought and actually amounted to a victory for the defendant'" (quoting *Lichter Foundation, Inc.* v. *Welch,* 269 F. 2d 142, 146 (CA6 1959))), cert. denied, 393 U. S. 983 (1968); *Esso Standard (Libya), Inc.* v. *SS Wisconsin,* 54 F. R. D. 26, 27 (SD Tex. 1971) ("Circumstances justifying denial of costs to the prevailing party [exist] where the judgment recovered was insignificant in comparison to the amount actually sought"); see also *Brown* v. *GSA,* 425 U. S. 820, 828 (1976) (inquiry is Congress' understanding of the law, correct or not). Just as a Pyrrhic victor would be denied costs under Rule 54(d), so too should it be denied fees under § 1988.

## II

In the context of this litigation, the technical or *de minimis* nature of Joseph Farrar's victory is readily apparent: He asked for a bundle and got a pittance. While we hold today that this pittance is enough to render him a prevailing party, *ante,* at 113–114, it does not by itself prevent his victory from being purely technical. It is true that Joseph Farrar recovered something. But holding that any award of nominal damages renders the victory material would "render the concept of de minimis relief meaningless. *Every* nominal damage award has as its basis a finding of liability, but obviously many such victories are Pyrrhic ones." *Lawrence* v. *Hinton,* 20 Fed. Rules Serv. 3d 934, 937 (CA4 1991); accord, *Commissioners Court of Medina County, Texas* v. *United States,* 221 U. S. App. D. C. 116, 123–124, 683 F. 2d 435, 442–443 (1982) (where "the net result achieved is so far from the

position originally propounded . . . it would be stretching the imagination to consider the result a 'victory' in the sense of vindicating the rights of the fee claimants"). That is not to say that *all* nominal damages awards are *de minimis*. Nominal relief does not necessarily a nominal victory make. See *ante*, at 115. But, as in pre-*Alyeska* and Rule 54(d) practice, see *supra*, at 119, 120, a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical. See *ante*, at 115 ("A plaintiff who seeks compensatory damages but receives no more than nominal damages" may "formally 'prevai[l]' under § 1988" but will "often" receive no fees at all). Here that suggestion is quite strong. Joseph Farrar asked for 17 million dollars; he got one. It is hard to envision a more dramatic difference.

The difference between the amount recovered and the damages sought is not the only consideration, however. *Carey* v. *Piphus*, 435 U. S. 247, 254 (1978), makes clear that an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved. *Ante*, at 112. Accordingly, the courts also must look to other factors. One is the significance of the legal issue on which the plaintiff claims to have prevailed. *Garland*, 489 U. S., at 792. Petitioners correctly point out that Joseph Farrar in a sense succeeded on a significant issue—liability. But even on that issue he cannot be said to have achieved a true victory. Respondent was just one of six defendants and the only one not found to have engaged in a conspiracy. If recovering one dollar from the least culpable defendant and nothing from the rest legitimately can be labeled a victory—and I doubt that it can—surely it is a hollow one. Joseph Farrar may have won a point, but the game, set, and match all went to the defendants.

Given that Joseph Farrar got *some* of what he wanted— one seventeen millionth, to be precise—his success might be considered material if it also accomplished some public goal

other than occupying the time and energy of counsel, court, and client. Section 1988 is not "a relief Act for lawyers." *Riverside* v. *Rivera*, 477 U. S. 561, 588 (1986) (REHNQUIST, J., dissenting). Instead, it is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory. Yet one searches these facts in vain for the public purpose this litigation might have served. The District Court speculated that the judgment, if accompanied by a large fee award, might deter future lawless conduct, see App. to Pet. for Cert. A23–A24, but did not identify the kind of lawless conduct that might be prevented. Nor is the conduct to be deterred apparent from the verdict, which even petitioners acknowledge is "regrettably obtuse." Tr. of Oral Arg. 16. Such a judgment cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernable meaning. Cf. *Chicano Police Officer's Assn.* v. *Stover*, 624 F. 2d 127, 131 (CA10 1980) (nuisance settlement that does not promote any public purpose cannot support award of attorney's fees), cited and quoted in *Garland, supra,* at 792.

### III

In this case, the relevant indicia of success—the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served—all point to a single conclusion: Joseph Farrar achieved only a *de minimis* victory. As the Court correctly holds today, the appropriate fee in such a case is no fee at all. Because the Court of Appeals gave Joseph Farrar everything he deserved—nothing—I join the Court's opinion affirming the judgment below.

JUSTICE WHITE, with whom JUSTICE BLACKMUN, JUSTICE STEVENS, and JUSTICE SOUTER join, concurring in part and dissenting in part.

We granted certiorari in this case to decide whether 42 U. S. C. § 1988 entitles a civil rights plaintiff who recovers

nominal damages to reasonable attorney's fees. Following our decisions in *Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782 (1989), *Hewitt* v. *Helms*, 482 U. S. 755 (1987), *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), and *Carey* v. *Piphus*, 435 U. S. 247 (1978), the Court holds that it does. With that aspect of today's decision, I agree. Because Farrar won an enforceable judgment against respondent, he has achieved a "material alteration" of their legal relationship, *Garland, supra*, at 792–793, and thus he is a "prevailing party" under the statute.

However, I see no reason for the Court to reach out and decide what amount of attorney's fees constitutes a reasonable amount in this instance. That issue was neither presented in the petition for certiorari nor briefed by petitioners. The opinion of the Court of Appeals was grounded exclusively in its determination that Farrar had not met the threshold requirement under § 1988. At no point did it purport to decide what a reasonable award should be if Farrar was a prevailing party.

It may be that the District Court abused its discretion and misapplied our precedents by belittling the significance of the amount of damages awarded in ascertaining petitioners' fees. Cf. *Hensley, supra*, at 436. But it is one thing to say that the court erred as a matter of law in awarding $280,000; quite another to decree, especially without the benefit of petitioners' views or consideration by the Court of Appeals, that the only fair fee was no fee whatsoever.*

Litigation in this case lasted for more than a decade, has entailed a 6-week trial and given rise to two appeals. Civil rights cases often are complex, and we therefore have committed the task of calculating attorney's fees to the trial court's discretion for good reason. See, *e. g., Hensley, supra*,

---

*In his brief to the Fifth Circuit, respondent did not argue that petitioners should be denied all fees even if they were found to be prevailing parties. Rather, he asserted that the District Court misapplied the law by awarding "excessive" fees and requested that they be reduced. See Brief for Defendant-Appellant in No. 90–2830, pp. 38–42.

at 436–437; *Garland, supra,* at 789–790; *Blanchard* v. *Berg-eron,* 489 U. S. 87, 96 (1989). Estimating what specific amount would be reasonable in this particular situation is not a matter of general importance on which our guidance is needed. Short of holding that recovery of nominal damages *never* can support the award of attorney's fees—which, clearly, the majority does not, see *ante,* at 115—the Court should follow its sensible practice and remand the case for reconsideration of the fee amount. Cf. *FTC* v. *Anheuser-Busch, Inc.,* 363 U. S. 536, 542 (1960). Indeed, respondent's counsel all but conceded at oral argument that, assuming the Court found Farrar to be a prevailing party, the question of reasonableness should be addressed on remand. See Tr. of Oral Arg. 31–32.

I would vacate the judgment of the Court of Appeals and remand the case for further proceedings. Accordingly, I dissent.