21 F.3d 420
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Susan WARREN, ET AL., Plaintiffs, Appellees,
v.
CITY of Lynn, ET AL., Defendants, Appellants. [Hon. Edward
F. Harrington, U.S. District Judge ]
 No. 93-1439
 United States Court of Appeals, First Circuit.
 April 6, 1994.
 
 Appeal from the United States District Court for the District of Massachusetts
 Austin M. Joyce with whom Edward P. Reardon and Michael J. Akerson were on brief for appellants.
 Geraldine S. Hines with whom Margaret A. Burnham was on brief for appellees.
 D.Mass.
 AFFIRMED.
 Before Boudin, Circuit Judge, Coffin, Senior Circuit Judge, and Pettine,* Senior District Judge.
 COFFIN, Senior Circuit Judge.
 
 
 1
 This appeal is the aftermath of a lawsuit brought by six members of the Warren family against members of the Lynn Police Department and the city of Lynn to redress violations of the Warrens' federal and state civil rights suffered when five family members were arrested, and the family home unlawfully searched, on August 16, 1985. On that evening, a convenience store in East Lynn was robbed at gunpoint. In following up on this robbery, defendant members of the Lynn police force ended up at the Warren home, over a mile and a half away from the store. There, they ultimately arrested five family members, engaged in an illegal search of their home and their persons, and falsely imprisoned at least one family member. Plaintiffs were not prosecuted in connection with the robbery, and were acquitted of various charges of assault and disorderly conduct in connection with their arrests.
 
 
 2
 A jury found five of the Lynn policemen guilty of various violations of the Warrens' federal and state civil rights. The city of Lynn and some half dozen other officers received defendants' verdicts. Punitive damages had been waived; compensatory damages were awarded in the amount of $2,500. Plaintiffs sought an award of $85,566.25 in counsel fees, and costs of $4,094.71. The court awarded costs and $50,000 for counsel fees.
 
 
 3
 Appellants challenge the court's denial of their motion for judgment notwithstanding the verdicts and the award of attorney's fees and costs. Before we can address the merits, however, we must face the issue of our appellate jurisdiction.
 
 Appellate Jurisdiction
 
 4
 1. The facts. This appeal initially was filed on June 14, 1991. On July 3, 1991, noting a number of potentially fatal jurisdictional defects (including the pendency of an additional post-judgment motion and the lack of separate documents of judgment), we issued an order to show cause why this appeal should not be dismissed. We cited to our court's panel decision in Fiore v. Washington County Community Health Center, 936 F.2d 51 (1st Cir. 1991), withdrawn and superseded by Fiore v. Washington County Community Health Center, 960 F.2d 229 (1st Cir. 1992) (en banc), in which, confronted with the question of how the "separate document" requirement of Fed. R. Civ. P. 58 should be applied in the context of post-judgment motions, we concluded that meticulous compliance was necessary.[1]
 
 
 5
 Shortly before our show cause order, on June 21, 1991, the district court denied the remaining post-judgment motion. On July 15, 1991 the defendants voluntarily dismissed their appeal. On March 30, 1992, we issued our en banc decision in Fiore, which reaffirmed the basic position originally adopted by the panel, requiring "meticulous compliance" with the separate document rule, and holding that when a party fails to pursue an appeal within three months of the court's last order in the case, waiver of the separate document requirement should be inferred. 960 F.2d at 231, 236. Appellants still took no action for over two more months. In June and July, 1992, they made several feckless attempts, by letters and conversations, to obtain separate documents from the clerk's office; nothing was forthcoming. Not until October 8, 1992, fifteen and one half months after the last order in the case was issued by the district court, and fifteen months after our show cause order, did appellants file a motion for entry of judgment and for issuance of separate documents.
 
 
 6
 On March 25, 1993, the district court allowed the motion for entry of judgment, but, in a margin order, denied the motion requesting that the court's post-trial orders be entered on separate documents. On April 14, 1993, the appellants filed a second appeal. We then issued another show cause order, pointing to the fact that, according to the district court docket sheet, the last order denying a post-judgment motion in this case had been entered on June 21, 1991. We noted that under Fiore, 960 F.2d at 236, absent exceptional circumstances, a party's failure to act within three months of a court's last order in a case will be deemed a waiver of application of the separate document requirement. Upon receipt of appellants' response, we allowed the appeal to proceed and referred decision on the jurisdictional issue to the present panel.
 
 
 7
 2. Discussion. In both the panel and en banc decisions in Fiore, we held that Rule 58 should apply to all orders denying post-judgment motions. Not only did we conclude that the language of both Rule 58 and Rule 4(a) requires this, but also that there was a need for an "unambiguous signal that the time for appeal has begun to run." 960 F.2d at 233. The en banc court reaffirmed the clear holding of the panel that parties could not sleep on their rights to separate documents indefinitely, but, barring exceptional circumstances, must take action within three months following entry of judgment, or waive application of the separate document requirement. The court stated:
 
 
 8
 If we were to hold without qualification that a judgment is not final until the court issues a separate document, we would open up the possibility that long dormant cases could be revived years after the parties had considered them to be over.
 
 
 9
 Id. at 236.
 
 We therefore announced:
 
 10
 We believe it appropriate, absent exceptional circumstances, to infer waiver where a party fails to act within three months of the court's last order in the case.... A party wishing to pursue an appeal and awaiting the separate document of judgment from the trial court can, and should, within that period file a motion for entry of judgment. Id.
 
 
 11
 Contrary to appellants' claims, both the panel and en banc decisions in Fiore are unambiguous in outlining the waiver rule. And appellants still waited over six months after the en banc decision to file their motion.[2]
 
 
 12
 Appellants seek refuge under the "exceptional circumstances" rubric by pointing to their attempts to raise the clerk's office to action by oral and letter requests. But inattention or inadvertence by the court short of active misleading cannot excuse counsel from his duty of diligence. This is why we specifically have instructed counsel "wishing to pursue an appeal and awaiting the separate document of judgment," 960 F.2d 236, to file a motion for entry of judgment.
 
 
 13
 We therefore must dismiss this appeal for lack of appellate jurisdiction.
 
 No manifest injustice
 
 14
 We add that this case is not an example of a technicality defeating justice. We have considered appellants' arguments on the merits and find them unimpressive.
 
 
 15
 Their claim that plaintiffs were not prevailing parties would have failed under Farrar v. Hobby, 113 S. Ct. 566, 573 (1992), in which the Supreme Court held that a plaintiff who wins nominal damages is a prevailing party under 42 U.S.C. Sec. 1988. Here more than nominal damages were awarded. Meaningful awards, payable by individual officers in recognition of their violation of plaintiffs' constitutional rights, made this the kind of case in which "the court may consider the vindication of constitutional rights in addition to the amount of damages recovered." Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment).
 
 
 16
 Our denial of fees to a plaintiff who had won a $1,000 verdict in Lewis v. Kendrick, 944 F.2d 949 (1st Cir. 1991), cannot compel a finding that the district court abused its discretion here. In Lewis, the amount won was less than half that awarded here. More importantly, in contrast to the situation of the plaintiffs in the case at bar, the court felt that the plaintiff in Lewis had "failed entirely or largely in everything," id. at 955, and that there had been extreme overreaching in the request for fees, id. at 956.
 
 
 17
 Appellants' claim that judgments notwithstanding the verdicts should have been granted rests on the argument that under the Massachusetts Civil Rights Act, Mass. Gen. Laws Ann. ch. 12, Secs. 11H and 11I (West 1986), interference with a person's rights under the Constitution or laws of the United States or the Commonwealth must be by "threats, intimidation or coercion," and that there was no evidence of such in this case.
 
 
 18
 The Massachusetts Supreme Judicial Court, however, while holding that there must be measures directed toward a particular individual or class, has found sufficient intimidation or coercion to satisfy the Act where a uniformed security officer ordered a plaintiff to stop soliciting and distributing his political handbills, see Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1130, 393 Mass. 819, 823 (1985), and where an orchestra canceled its contract with a performer, see Redgrave v. Boston Symphony Orchestra, Inc., 502 N.E.2d 1375, 1378, 399 Mass. 93, 100 (1987), since the effect of these actions was to coerce the plaintiffs not to exercise rights to which they were entitled. See Batchelder, 473 N.E.2d at 1131; Redgrave, 502 N.E.2d at 1379.
 
 
 19
 When we review the events in this case-the policemen's forcible descent on plaintiffs at their home, the beatings, the overnight incarcerations, and a search based on perjurious evidence-we can understand how the jury, under instructions not challenged, could have found the existence of threats of harm within the meaning of the Massachusetts Civil Rights Act, particularly in light of plaintiffs' claim that the policemen's behavior was aggravated by protest against their arrests.
 
 
 20
 We therefore conclude that the serious procedural default of appellants, resulting in our lack of appellate jurisdiction, has not led to any unjust result.
 
 
 21
 Affirmed. A reasonable attorney's fee of $3,000 and costs are awarded to appellees.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 Rule 58 requires that "[e]very judgment shall be set forth on a separate document," and provides that "[a] judgment is effective only when so set forth...."
 
 
 [2]
 At oral argument, when questioned about this six month delay, appellants' counsel replied: "I hadn't read the en banc Fiore decision. At that time, we didn't realize that there was a three month period until it was brought to our attention by the plaintiffs ... shortly before we filed the motion." They further stated that "other than not knowing" of the en banc decision in Fiore, there were no special circumstances excusing the delay between the time that decision was issued on March 30, 1992, and the filing of their motion with the district court on October8, 1992