Mary Ellen LAZARUS, Plaintiff,

v.

COUNTY OF SULLIVAN and Judith Maier, Commissioner, Sullivan County, Division of Health & Family Services Defendants,

No. 00 CIV. 2316(MDF).

United States District Court,
S.D. New York.

June 30, 2003.

Robert N. Isseks, Esq., Middletown, NY.

Michael Frey, Esq., Appelbaum, Bauman, Appelbaum & Frey, Liberty, NY.

### MEMORANDUM ORDER

FOX, United States Magistrate Judge.

Plaintiff's attorneys, Robert N. Isseks and Alex Smith, move for attorneys' fees and disbursements pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a. Defendants, Sullivan County and Judith Maier, Commissioner of Sullivan County Division of Health and Family Services, oppose the motion on the ground that plaintiff was not a prevailing party within the meaning of § 12205. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge for all purposes including trial. For the following reasons, the motion is granted.

### Background

In March 2000, Lazarus commenced this action, alleging that the defendants discriminated against her by failing to reasonably accommodate her disability, blindness, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq. Lazarus, who is legally blind, has been employed by the Sullivan County Division of Health and Family Services since January 1984. Since April 1998, she had been working as a Supervising Senior Caseworker in the Preventative Services Unit. Lazarus's duties involved only office work. As an accommodation for Lazarus's disability, defendants assigned a part-time assistant to help her twenty hours a week.

In July 1998, with the permission of her supervisor, Lazarus began working in the field as an investigator, having her assistant chauffeur her to assigned locations. Within a few days of her new assignment, Commissioner Maier ended Lazarus's field work, informing her that the assistant would not be allowed to drive her in the field. Undaunted, Lazarus applied for various positions requiring field work from July 1998 until November 1999. Each time, her application was denied due to her visual impairment.

Lazarus then filed her federal complaint. Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). This Court denied the motion. Prior to the scheduled trial date, the parties agreed to a consent decree. The decree stipulated that Lazarus would be provisionally employed by the Sullivan County Department of Social Services's Foster Care Unit as a Case Supervisor, Grade B, a position not involving field work, but a promotion from her current assignment. *See* Consent Decree at 1–2; *see also* Rourke Aff. at 2. Furthermore, Lazarus was required to take and pass the required Civil Service Exam for the Case Supervisor, Grade B position and would be appointed to a permanent position if she met the eligibility requirements. *See* Consent Decree at 2; *see also* Rourke Aff. at 2. The decree also provided that she would not apply again for a position as an investigator, a field work position. *See* Consent Decree at 3. Finally, the decree reserved the issue of attorney's fees and disbursements for the Court's determination upon application by Lazarus. *Id.*

In October 2002, the test results were released and Lazarus passed, ranking seventh out of the seven applicants who passed the test. *See* Rourke Aff. at 2. Civil Service law authorized the appointment of any of the top three candidates. *Id.* After some candidates accepted other positions, Lazarus moved up to the third position on the list and was officially appointed to the position as Supervisor B, with a six month probationary period. *Id.* The probationary period has passed and she is now a permanent Supervisor B. *Id.* at 2–3.

Lazarus moves for attorney's fees, arguing that, by operation of the consent decree, the legal relationship between the parties was materially altered and she was therefore entitled to fees as the prevailing party in the litigation. In sum, she claims $20,221.38 in fees and disbursements, $17,775.00 in fees for Isseks, $1,950.00 in fees for Smith, and $496.38 in disbursements. In their opposition, defendants argue that the legal relationship between the parties has not been materially altered because Lazarus did not receive the money damages she sought in her complaint or a position that involved field work, specifically giving up her right to seek such a position in the future. The reasonableness of the fee amount is not in dispute.

### Discussion

■ The ADA provides that a district court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A party prevails "when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Under the ADA, consent decrees may serve as the basis for an award of attorney's fees. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Although consent decrees do not always contain an admission of liability, they nonetheless effectuate a change in the legal relationship of the parties.[1] *Id.* "[C]onsent decrees [therefore] create the *material alteration* of the legal relationship of the parties necessary to permit an

award of attorney's fees." *Id.* (emphasis added).

The question presented by the parties in this fee application is whether obtaining a consent decree implicitly "creates" the *material alteration* necessary for finding Lazarus the prevailing party or is it incumbent upon Lazarus to establish that she received some benefit sought in the complaint before prevailing status can attach. Put another way, is merely obtaining a consent decree enough? Defendants are correct that Lazarus did not obtain in the consent decree the precise relief she sought in her complaint. In the complaint, Lazarus sought, *inter alia:* (1) to be instated as an investigator, a position involving field work; and (2) compensatory and punitive damages. Lazarus did not receive either in the decree. Instead, she received a promotion to a position not involving field work and agreed to never seek the investigator position again. Thus, within the context of this fee application, determining whether obtaining a consent decree alone makes Lazarus the prevailing party is central to determining whether to grant the fee application.

It appears the parties have uncovered a novel issue. The *Buckhannon* decision, and the decisions within this Circuit since, do not address similar factual circumstances. In each case in which a consent decree or a judgment on the merits is involved, the courts have found that the plaintiff is a prevailing party, but had obtained at least some relief sought in the complaint. In cases where neither a consent decree nor a judgment is involved, the courts have determined that the plaintiff was not a prevailing party and denied the fee application. In this case, Lazarus ob-

---

1. The consent decree in this matter explicitly denied any liability for any alleged violation of plaintiff's rights. *See* Consent Decree at ¶ 2.

tained a consent decree, but not the precise benefits she sought in her complaint.

The *Buckhannon* decision does not shed light on this issue. In *Buckhannon*, the Court noted that a consent decree *"may"* serve as the basis for awarding the fee, but found that consent decrees are *"nonetheless"* court-ordered changes in the legal relationship of the parties and therefore *"create"* the material alteration necessary for a fee award. 532 U.S. at 604, 121 S.Ct. 1835 (emphasis added). The plaintiff in *Buckhannon* was seeking declaratory and injunctive relief that the "self-preservation" requirement as defined under state law, W. Va.Code §§ 16–5H–1, 16–5H–2 (1998), violated the Fair Housing Amendments Act of 1988 (FHAA), 102 Stat. 1619, 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act of 1990(ADA), 104 Stat. 327, 42 U.S.C. § 12101 et seq. *Id.* at 600–01, 121 S.Ct. 1835. While the case was pending, the Virginia legislature enacted two bills eliminating the "self-preservation" requirement. *Id.* at 601, 121 S.Ct. 1835. The defendant moved to dismiss the suit on mootness grounds, which the district court for the Northern District of West Virginia granted. *Id.* The plaintiff moved for attorney's fees under the then

widely accepted "catalyst theory." [2]  *Id.* The district court denied the motion and the Fourth Circuit Court of Appeals affirmed, rejecting the "catalyst theory." *Id.* at 601–02, 121 S.Ct. 1835. The Supreme Court then affirmed the Fourth Circuit, holding that the "catalyst theory" is not a permissible basis for granting a fee application under the FHAA and ADA. *Id.* at 610, 121 S.Ct. 1835.

The plaintiff in *Buckhannon* differs from Lazarus because he received the relief he sought—to be released from the "self-preservation" requirement. Furthermore, the Supreme Court labored to answer the question of whether a party is entitled to attorney's fees when the "party ... has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the *desired* result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835 (emphasis added). Here, Lazarus did not achieve the *desired* results in her complaint—compensation or a position involving field work, although she did achieve preferred status in obtaining her promotion. Thus, under *Buckhannon*, whether Lazarus is entitled to fees is unclear.[3]

**2.** Under the "catalyst theory," a plaintiff did not need to obtain a judgment or settlement in his or her favor so long as "the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit." *McGinty v. New York*, 251 F.3d 84, 100 (2d Cir.2001). "A causal connection must exist between the lawsuit and the change in the defendant's conduct." *Id.* Although the majority of the Circuits accepted the catalyst theory, as noted above, the Fourth Circuit rejected the theory in *S–1 and S–2 v. State Bd. of Ed. of N. C.*, 21 F.3d 49, 51 (4th Cir.1994) (en banc). *See Buckhannon*, 532 U.S. at 602, 121 S.Ct. 1835. The conflict among the Circuits prompted the *Buckhannon* decision.

**3.** The concurring and dissenting opinions in *Buckhannon* also do not provide guidance.

In his concurrence, Justice Scalia writes that, "in the case of court-approved settlements and consent decrees, even if there has been no judicial determination of the merits, the outcome is at least the product of, and bears the sanction of, judicial action in the lawsuit. There is at least some basis for saying that the party favored by the settlement or decree prevailed in the suit." *Id.* at 618, 121 S.Ct. 1835. Justice Scalia then sums up the Court's holding as: "a party cannot be deemed to have prevailed unless there has been a legally enforceable alteration in the relationship of the parties." *Id.* at 622, 121 S.Ct. 1835. The dissent, in arguing for maintaining the catalyst theory, favors holding that a plaintiff prevails "when a litigated judgment, consent decree, out-of-court settlement, or the defendant's voluntary, postcomplaint payment or change in conduct in fact affords

Some decisions that have interpreted *Buckhannon* are equally unhelpful. For example, the Fourth Circuit has noted that prevailing party status requires the plaintiff to obtain some relief sought in bringing the lawsuit in the first place. *See Smyth ex rel. Smyth v. Rivero,* 282 F.3d, 268, 282 n. 11 (4th Cir.2002). Further, at least one Southern District of New York decision has similarly found that plaintiff must have some degree of success on the merits before prevailing party status can attach. *See Union of Needletrades, Industrial and Textile Employers, AFL–CIO, CLC v. INS,* 202 F.Supp.2d 265, 283 (S.D.N.Y. 2002).

Despite these cases, I find that the focus of the *Buckhannon* decision supports awarding prevailing party status to Lazarus. *Buckhannon's* primary concern was with the "judicial imprimatur" on the change in the relationship of the parties, even if the plaintiff only "perhaps" accomplished what he or she sought in the complaint. *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835. In addition, courts within this district have observed that consent decrees involve a level of judicial approval and oversight that private settlements or agreements do not, thus satisfying *Buckhannon's* imprimatur concern. *See Roberson v. Giuliani,* No. 99 CIV. 10900, 2002 WL 253950, at *4–5 (S.D.N.Y. Feb. 21, 2002); *J.S. v. Ramapo Cent. School Dist.,* 165 F.Supp.2d 570, 575 (S.D.N.Y.2001). Because of the inherent judicial involvement throughout a consent decree's existence, and the importance placed on it by the Supreme Court, whether Lazarus obtained the specific relief called for in her complaint does not seem dispositive. Morever, Lazarus does not leave the lawsuit empty-handed. Prior to filing the lawsuit,

Lazarus was a Supervising Senior Caseworker. As a result of the lawsuit and the consent decree, Lazarus secured a promotion to the position of Case Supervisor, Grade B. It is clear that the consent decree altered the legal relationship between Lazarus and the defendants.

■ Furthermore, "[a] plaintiff who achieves relief as a result of a settlement may be considered a prevailing party if the relief obtained was of the same general type as the relief sought." *Lyte v. Sara Lee Corp.,* 950 F.2d 101, 104 (2d Cir.1991) (internal quotation marks omitted). Although most of the cases discussing the "type" of relief deal with damages, the principle is the same—a plaintiff who receives even nominal relief, accompanied by an enforceable judgment or consent decree, is considered the prevailing party. *See Farrar,* 506 U.S. at 113, 113 S.Ct. 566; *see also LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994). Despite not receiving the investigator position specifically involving field work, Lazarus received generally something she sought in the complaint, advancement in her career. The fact that she did not receive the position as an investigator does not diminish her prevailing status. *Cf. Carroll v. Blinken,* 42 F.3d 122, 129–30 (2d Cir.1994) (finding prevailing party status where plaintiff succeeded on an issue that was not the significant motivating factor behind the complaint). Moreover, the fact that she did not receive a judicial pronouncement of a violation of her civil rights is of no consequence. *See Lyte,* 950 F.2d at 104–05. Accordingly, I find that Lazarus is entitled to an award of fees.

Defendants argue that Lazarus's promotion was simply her "natural progression" under the Civil Service System and

redress for the plaintiff's substantial grievances." *Id.* at 643, 121 S.Ct. 1835. Neither opinion addresses whether the prevailing party must receive something specifically sought in the complaint.

not the result of the lawsuit. Therefore, defendants assert that she did not receive any benefit as a result of the decree to which she was not already entitled. I respectfully disagree. It is undisputed that, under the Civil Service law, any of the top three candidates for the Case Supervisor, Grade B who passed the Civil Service Exam could have been appointed to the position. Under the decree, once Lazarus entered the top three, she was to be promoted. *See* Rourke Aff. at 2. Without the decree, the County was not obligated to appoint her, and could have appointed either of the two remaining candidates on the list. Therefore, the decree gave her something beyond the natural progression of her county service.

Finally, the parties do not dispute the reasonableness of the fee amount. In any event, I have reviewed the fee application and find that the amount is reasonable.

### Conclusion

For the foregoing reasons, Isseks's and Simth's fee application is granted. Attorney's fees in the amount of $20,221.38 shall be awarded—$17,775.00 in fees for Isseks, $1,950.00 in fees for Smith, and $496.38 in disbursements. The Clerk is directed to enter a final judgment in these amounts and to dismiss this action with prejudice in accordance with the provisions of the consent decree.

SO ORDERED.