9 F.3d 108
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
V. Dennis LODISE and Jeffrey Dean Kirkpatrick, Plaintiffs-Appellants,
v.
John LODISE, Defendant-Appellee,
Jackson Credit Exchange, Defendant.
 No. 92-2163.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 This case was brought under the Fair Credit Reporting Act ("FCRA"), alleging improper acquisition and use of credit reports. Plaintiffs appeal the district court's award to them of only $1 in nominal and $500 in punitive damages and the district court's denial of attorney's fees. We affirm the award of nominal and punitive damages, but remand for reconsideration on the issue of attorney's fees under the proper standards.
 
 
 2
 * Plaintiff V. Dennis Lodise is the owner of Lodise Bail Bonds ("LBB") and the nephew of defendant John Lodise, who owns Statewide Bail Bonds ("SBB"). Plaintiff Jeffrey Dean Kirkpatrick is an employee at LBB. LBB has operated a bonding business for many years; John Lodise established SBB in 1990 when Dennis failed to bond out a friend of John's promptly. An "intense rivalry" has developed between the two bonding businesses.
 
 
 3
 On June 6, 1991, someone using the code number assigned to SBB obtained credit reports on Kirkpatrick from defendant Jackson Credit Exchange;[1] on July 8, 1991, someone using SBB's code number obtained credit reports on Dennis Lodise. John Lodise admits that it was his number that was used, but denies that he authorized the acquisition of the credit reports; his employees at SBB deny obtaining the reports as well.
 
 
 4
 Plaintiffs allege improper acquisition and use of credit reports in violation of the FCRA, 15 U.S.C. Sec. 1681. At the final pretrial conference on July 21, 1992, the judge stated the legal issue for trial to be whether the reports had been obtained "for a permissible purpose under the Fair Credit Reporting Act." Plaintiffs stipulated to seeking $1 in actual damages, $100,000 in punitive damages, and attorney's fees and costs. A bench trial followed.
 
 
 5
 During the trial, John Lodise testified that the financial information in the credit reports was available to the general public through the county clerk's office and that he knew how to get it from that office. The district court found that the information in the credit reports was not disseminated to anyone, nor were plaintiffs denied credit or otherwise harmed.
 
 
 6
 The district court awarded each plaintiff $1 in nominal damages and a total of $500 in punitive damages. The district court awarded the $500 punitive damages in order that John Lodise understand that his behavior was inappropriate; the district court had concluded that he had violated the provisions of the FCRA by ordering the reports without a proper purpose, although he had not used them for an improper use. Plaintiffs moved for an award of costs and attorney's fees. The district court awarded costs for filing, service, and witness fees, but declined to award attorney's fees. The court found that, because the FCRA was not "intended to be used as an instrument for the redress of internecine quarrels," no attorney's fees would be "reasonable" in this case.
 
 II
 
 7
 Under the FCRA, a credit report may be furnished by a consumer reporting agency, such as Jackson Credit Exchange, only for one of a specified list of purposes. 15 U.S.C. Sec. 1681b. The FCRA also mandates certain disclosure requirements and compliance procedures. 15 U.S.C. Secs. 1681d, 1681e. A consumer reporting agency or user of information that willfully fails to comply with the requirements of the FCRA with respect to any consumer is liable to that consumer for (1) "any actual damages sustained by the consumer as a result of the failure"; (2) "such amount of punitive damages as the court may allow"; and (3) "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. Sec. 1681n.
 
 III
 
 8
 * " 'The determination of the amount of damages to be awarded is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 606 (6th Cir.1988) (quoting Smith v. Heath, 691 F.2d 220, 226 (6th Cir.1982)). " 'Questions raised concerning damages are essentially questions of fact.' " Canderm Pharmacal, 862 F.2d at 606 (quoting Duty v. United States Dept. of Interior, 735 F.2d 1012, 1014 (6th Cir.1984)). Findings of fact are reviewed under the clearly erroneous standard and should not be set aside unless the reviewing court has the "definite and firm conviction that a mistake has been made." Brown v. UAW, 689 F.2d 69, 71 (6th Cir.1982).
 
 
 9
 Plaintiffs argue on appeal that they suffered humiliation and embarrassment. The district court weighed the credibility of their testimony in this respect and determined that $1 in nominal damages was appropriate. Their testimony regarding humiliation and embarrassment amounts to little more than conclusory assertions as to how they felt. Given that the district court also found that the information in the credit reports was publicly available,[2] that John Lodise knew how to get the information through the legal public channels, and that the reports obtained were not disseminated, the district court's findings that plaintiffs suffered no actual damages were not clearly erroneous. Further, pursuant to the pretrial order, plaintiffs claimed only $1 in actual damages. The award of $1 in nominal damages was proper.
 
 B
 
 10
 The FCRA authorizes an award of such punitive damages "as the court may allow." The district court declined to award more than $500 because this lawsuit was the result of a family feud, because John Lodise did not disseminate the reports, because he did not try to hurt plaintiffs' reputation or impede their obtaining credit, and because beyond obtaining the reports he did not use them for any improper use.
 
 
 11
 Damages, including punitive damages, are factual determinations subject to the clearly erroneous standard. See Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1198 (6th Cir.1988). We cannot say that the district court's award of $500 in punitive damages was clearly erroneous.
 
 
 12
 Plaintiffs cite cases in which no actual damages were awarded but punitive damages were deemed appropriate. See, e.g., Russell v. Shelter Financial Services, 604 F.Supp. 201 (W.D.Mo.1984) (no actual damages; $1 nominal damages; remand to jury to determine punitive damages); Boothe v. TRW Credit Data, 557 F.Supp. 66 (S.D.N.Y.1982) (no actual damages; $15,000 punitive damages). Plaintiffs also correctly point out that punitive damages may be awarded for a willful violation of the FCRA. Plaintiffs' arguments, however, as to why the district court's award is erroneous amount to the following: other courts have awarded punitive damages where no actual damages were found; there was no conceivably proper purpose for which John Lodise could obtain the reports; the district judge at the pretrial conference mistakenly required a showing of malice for punitive damages to be awarded;[3] and the district judge had remarked that this case should have been settled long before trial.
 
 
 13
 The cases cited by plaintiffs indicate that the district court's findings with respect to punitive damages were not clearly erroneous. In Russell, the issue of punitive damages was remanded to the jury, so the amount awarded is not known. Russell, 604 F.Supp. at 203. In Boothe, the court emphasized the invasion of plaintiff's privacy (which the court found had greatly distressed plaintiff) as the basis for the $15,000 punitive damages award; here, in contrast, the information on plaintiffs was otherwise publicly available, suggesting no invasion of privacy. Boothe, 557 F.Supp. at 71-72. Further, the Boothe defendant's agent had "falsely portrayed" himself in order to get information to obtain the report in question. Id. at 68. This is conduct beyond anything found in the case here. The $500 punitive damages award is not clearly erroneous.
 
 C
 
 14
 The district court's award or denial of attorney's fees is reviewed for abuse of discretion. Monroe Auto Equipment v. UAW, Local 878, 981 F.2d 261, 269 (6th Cir.1992), cert. denied, 113 S.Ct. 2396 (1993) (citing Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1472 (6th Cir.1992)). While Bryant v. TRW, Inc., 689 F.2d 72, 80 (6th Cir.1982), adopts the rule in Northcross v. Board of Educ., 611 F.2d 624, 636 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999 (1980) (Sec. 1988 case), that a fee calculated in terms of hours of service is the "fairest and most manageable approach" to attorney's fees, the standard of review remains abuse of discretion. See also Louisville Black Police Officers Org'n, Inc. v. City of Louisville, 700 F.2d 268, 274 (6th Cir.1983) (Sec. 1988 case). The court, however, must provide a clear explanation for the basis of its award, indicating that it has considered the relationship between the award and the results obtained. Drennan v. General Motors Corp., 977 F.2d 246, 253 (6th Cir.1992), cert. denied, 113 S.Ct. 2416 (1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983), and citing Northcross, 611 F.2d at 636).
 
 
 15
 Plaintiffs, citing no authority, argue that the language of 15 U.S.C. Sec. 1681n "has been consistently construed to allow the Court to determine the reasonableness of attorney fees and not ... whether or not granting attorney fees are [sic] 'reasonable.' " Appellant's Brief at 15. Plaintiffs also argue that "reasonable" means awarding the fee calculated on an hourly rate basis. The district court, however, stated that "all of the parties to this action appeared to be acting out of vindictiveness and petty family squabbling" and the FCRA "was not intended to be used as an instrument for the redress of internecine quarrels." The court therefore declined to find that any attorney's fees would be "reasonable" here. J.A. at 16.
 
 
 16
 While we appreciate the district court's concern for misuse of the FCRA's remedial provisions, we remand the issue of attorney's fees for a determination in line with this court's guidelines. The FCRA provides that, in this case, John Lodise is liable to the plaintiffs for "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. Sec. 1681n. This court in Bryant indicated that the fairest and most manageable approach to calculating attorney's fees under the FCRA would be in terms of hours of service.
 
 
 17
 Of course, the district court need not award the full amount sought by plaintiffs. In determining the reasonableness of the fee, the district court should consider the degree of success obtained, which is the most critical factor in determining reasonableness. See Farrar v. Hobby, 113 S.Ct. 566, 574 (1992) (Sec. 1988 case) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983)); Citizens Against Tax Waste v. Westerville City School Dist. Bd. of Educ., 985 F.2d 255, 258 (6th Cir.1993) (Sec. 1988 case) (quoting Farrar, 113 S.Ct. at 574). The court should consider whether plaintiffs obtained only "moral satisfaction" or a victory of only a "technical nature" and whether plaintiffs achieved only partial or limited success. Citizens Against Tax Waste, 985 F.2d at 258 (quoting Farrar, 113 S.Ct. at 574.).
 
 D
 
 18
 Finally, plaintiffs assert that the district court showed bias and prejudice against them; plaintiffs, however, do not indicate what remedy they seek. Plaintiffs, again citing no legal authority, argue that the district judge's bias and prejudice against them was indicated by the judge's remarks that this case should not have proceeded to trial, by the judge's findings of fact contrary to plaintiffs' contentions, by the judge's mistake regarding the requirement of willful failure, not malice, at the pretrial conference, by the judge's belief that this was not much more than a family quarrel, and by the judge's refusal to award attorney's fees.
 
 
 19
 After carefully reviewing the record, we cannot say that the district court's conduct or statements constitute bias or prejudice. The district judge did not indicate a one-sided hostility to plaintiffs, although the judge did appear a bit irritated with both parties for having caused this action to go all the way to trial. The indication that this was a family quarrel similarly does not show favoritism toward one party. The findings of fact do not indicate a prejudgment of the case or alignment with John Lodise. Plaintiffs allege that finding that plaintiffs' testimony was not credible (regarding embarrassment and humiliation), that John Lodise did not know the requirements of the FCRA, and that John Lodise did not use the reports for an improper use and did not have anything to gain by obtaining the reports, indicates prejudice. Such mere conclusory allegations about the judge's findings of fact do not indicate bias. Finally, to the extent that the judge's mistake regarding the requirement of willfulness indicates bias or prejudice, she corrected it at trial, noting the correct standard. We find no bias or prejudice against plaintiffs by the district court.
 
 IV
 
 20
 For the foregoing reasons, we AFFIRM the decision of the district court with respect to the award of nominal and punitive damages, and we REMAND the case for a determination of attorney's fees consistent with this opinion.
 
 
 
 *
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Jackson Credit Exchange d/b/a Credit Bureau of Jackson was originally named as a defendant, but was dismissed by the court with the agreement of the other parties
 
 
 [2]
 Actually, the testimony indicates that only a limited amount of information on Kirkpatrick was publicly available. Trial Transcript at 108
 
 
 [3]
 The court later corrected its error, requiring only a willful violation