## The BOARD OF EDUCATION OF HARFORD COUNTY, Plaintiff,

v.

## Susan THOMAS, Defendant.

### No. Civ. AMD 97–3793.

United States District Court, D. Maryland.

March 1, 1999.

---

Patrick P. Spicer, Spicer, Stevenson & Haskins, Bel Air, MD, for plaintiff.

Wayne Darryl Steedman, Callegary & Steedman, Baltimore, MD, for defendants.

## ORDER DENYING MOTION FOR ATTORNEY'S FEES

DAVIS, District Judge.

Pending before the court is the motion of Defendant for an award of attorney's fees. The motion shall be denied for the reasons stated herein.

Plaintiff, the Board of Education of Harford County, Maryland ("the Board"), filed a complaint in this court against Defendant Susan Thomas, a resident of Harford County ("Thomas") in both her individual capacity and in her capacity as the mother of a disabled student, Colin Hinson ("Colin"). The Board alleged a claim for judicial review under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e)(2) ("IDEA").[1] Thomas promptly moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and the Board moved for summary judgment.

The Board's complaint sought a peculiar form of purely procedural relief. It alleged that it had provided special education services to Colin from 1992 through the 1995–96 school year. Specifically, from 1994 through 1996, those services were provided in a private school setting at a location in Connecticut, for which the Board paid the costs. Upon the child's discharge from the school in Connecticut at the end of the 1995–96 school year, the parties commenced administrative proceedings (i.e., an Admission, Review and Dismissal Committee meeting ("ARD")) with the aim of fashioning an appropriate Individualized Education Program ("IEP") for Colin. According to the allegations of the complaint, the parties reached agreement as to an appropriate IEP, however, Thomas had a change of heart and refused to allow implementation of the IEP. Instead, Thomas acted unilaterally and enrolled the child in a private school in Pennsylvania for the 1996–97 school year.

Thereafter, Thomas instituted state administrative proceedings against the Board seeking reimbursement of the tuition costs for 1996–97. The Board prevailed as to this claim at the state administrative level, and Thomas then sought judicial review in state court of that administrative determination. In the meantime, as the 1997–98 school year drew near, Thomas notified the Board that

---

1. Although no difference in outcome is apparent, the facts and circumstances involved in this case arose before the effective dates of the recent amendments to IDEA, *see* Individuals with Disabilities Education Act Amendments of 1997, P.L. No. 105–17, June 4, 1997, 111 Stat. 37, and I apply only the unamended version of the statute here. *See Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 n. 1 (5th Cir.1997) (IDEA amendments not given retroactive effect), *cert. denied,* —— U.S. ——, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998).

she would be seeking reimbursement for a private placement for Colin for the upcoming school year, but she did not actually assert a claim for reimbursement. Colin remained in the same school at the start of school year 1997–98.

Upon its receipt of the notice regarding 1997–98, and before Thomas actually asserted a claim for reimbursement for that school year, the Board, noting that Colin had not been evaluated by the Board's experts in several years, requested that Thomas make Colin available for an evaluation. Counsel for the parties negotiated over the terms and conditions of the proposed evaluation, but ultimately those negotiations were unsuccessful. Accordingly, the Board instituted administrative proceedings to compel Colin's evaluation, i.e., a due process hearing.

In its initial administrative complaint, filed on or about September 2, 1997, the Board sought only an order compelling Thomas to make Colin available for "psychological and educational evaluations." *See* Mem. Supp. Board's Mot. Summ. Judgmt., Ex. 1, at 2. ("The proposed resolution of this matter is that the parent be ordered to provide consent for psychological and educational evaluations to be completed by the school system and that she further be ordered to make [Colin] available for such evaluations."). Thus, as of the filing of the Board's administrative action, Colin was enrolled in private

school in Pennsylvania and Thomas had not yet instituted a claim for reimbursement under state or federal law. The Board's administrative complaint sought only an order in the nature of an injunction to compel evaluations.

Thomas filed a motion to dismiss the administrative proceedings. Apparently, the motion for summary dismissal filed before the administrative tribunal, like the motion to dismiss here, was grounded in the fact that because Colin was enrolled in a private school rather than in a local public school, he was essentially not within the jurisdiction of the Board. In response, *inter alia*, the Board filed an insignificant amendment to its administrative complaint to request "such relief with respect to the evaluations requested herein as ... is authorized ... pursuant to applicable federal and state law and regulation [sic]." *See id.* at Ex. 2.

Ultimately, a state administrative law judge ("ALJ") granted Thomas's motion to dismiss on the ground that he lacked the authority to order Thomas to produce Colin for assessment or evaluation under the relevant regulation.[2] *See id.* Ex. 3, at 6 ("[T]here is no legal basis on which the Administrative Law Judge may order a parent to produce a child for a meeting or an assessment."). The precise basis for the ALJ's conclusion that he lacked authority is somewhat obscure. On the one hand, it seems he

2. *See* Code of Maryland Regs., 13A.05.01.13:

Prior Notice and Parent Consent.
A. The procedures in Sec. B—D of this regulation are established to assure that students with disabilities and their parents are guaranteed appropriate safeguards with respect to their right to receive notices and provide consent.

\* \* \* \* \* \*

D. Parent Consent.
(1) Public agencies shall obtain prior consent by the parent or parents before conducting an assessment procedure under Regulation .05C or D of this chapter initially placing a student in special education, or initiating a change in the student's individualized education program or placement.

\* \* \* \* \* \*

(3) When parent consent is not provided, the procedures in Sec. E of this regulation apply.
E. Procedures When Parent Consent is not Provided.

(1) A public agency shall request a local due process hearing and notify the parent of the request when the parent:
(a) Gives written notice refusing consent to an assessment ...
(2) The hearing officer shall review the proposed action. If the hearing officer approves the proposed action, the public agency shall notify the parents of the decision and inform the parents when the proposed action will be implemented. The proposed action shall be implemented not sooner than 30 days or later than 45 days from the date of the decision unless the parent files an appeal under Regulation .15 of this chapter....

Neither Maryland's courts nor its administrative agencies have had occasion to construe this regulation definitively, and in particular whether subsection E applies to a child who is enrolled in a private school at the parents' cost. The parties have cited unreported informal opinions of federal and state educational authorities that merely touch on the issue.

reached the legal conclusion that he lacked the authority to issue the type of mandatory "injunctive" relief sought by the Board. On the other hand, he seemed to rely on the overall thrust of the relevant regulation, *supra* n. 2, which seems by strong implication to exclude from the purview of § E a disabled child who is enrolled at the cost of the parent in a private school. Finally, the ALJ seemed to conclude that his lack of authority was made even more manifest by virtue of the fact that Colin had been enrolled in an *out-of-state private school,* and therefore, according to his analysis of the relevant state regulation, Colin was not then a *resident* of Maryland within the contemplation of the regulation. *See id.*

Thus, the Board's complaint before this court alleged that it sought an "appeal[ ][of] the order" of the state administrative law judge. Specifically, it sought to have this court reverse the determination of the state administrative law judge, as a matter of state substantive and procedural law, and "[e]nter an [o]rder requiring ... Thomas to make Colin available for such ... evaluations." Comp. at 7, ¶ F. After a review of the pending motions and of the record, I concluded that solely a question of state law was presented, that therefore this court lacked subject matter jurisdiction, and I dismissed the complaint without prejudice.

Subsequently, the Board filed a motion to alter or amend the judgment of dismissal. First, the Board pointed out that I had concluded, incorrectly, and had relied in part on the belief that Thomas had sought judicial review in state court of the refusal of the Board to provide reimbursement for the 1997–98 school year. Indeed, while Thomas had appealed to state court (rather than to this court) the adverse administrative determination regarding the 1996–97 school year, the Board correctly noted that as of the time of my dismissal order, Thomas had not taken any action regarding the 1997–98 school year, beyond her notice of intent to seek reimbursement. Second, the Board argued, with considerable persuasiveness, that my conclusion that there was an absence of federal subject matter jurisdiction was erroneous. Accordingly, I ordered Thomas to file a response to the motion to alter or amend.

Thomas did so, and in connection with her opposition to the motion to alter or amend, she made a binding judicial admission that she would *not* seek reimbursement for Colin's private placement for the 1997–98 school year. Accordingly, since the gravamen of the Board's complaint had always been its asserted need to conduct an evaluation of Colin for the purpose of preparing an IEP suitable for the 1997–98 school year, and since there was no longer any genuine threat that Thomas would seek reimbursement for that school year, I concluded that the case was moot and that therefore the motion to alter or amend should be denied. I denied the motion to alter or amend.

Thereafter, Thomas filed the instant motion for an award of attorney's fees seeking in excess of $20,000. The Board then filed a motion to extend time to appeal until after the motion for attorney's fees had been adjudicated, which I denied. Thereupon, the Board noted its appeal to the United States Court of Appeals for the Fourth Circuit of my prior orders dismissing the case and denying the motion to alter and amend. Subsequently, the Board dismissed its appeal of those orders.

I held a hearing on the motion for attorney's fees after the parties had briefed the issues.

Title 20 U.S.C. § 1415(e)(4)(B) provides: "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." The Fourth Circuit has recently reiterated the view that the fee-shifting provision of the IDEA is an important aspect of the congressional scheme. *Doe v. Board of Educ. of Baltimore County,* 165 F.3d 260, 263–64 (4th Cir.1998) ("Indisputably, disabled children pursuing IDEA claims merit the very best representation.... Loving parents ... will of course 'fight' for their children.... Precisely because disabled children deserve independent legal services, *the IDEA fee-shifting provision should be read to encourage parents to*

*obtain independent legal services. Indeed, courts must take special care to protect the interests of children, given that an ' "infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." ' ")* (emphasis added) (citation omitted).

■ As under other fee-shifting provisions in the civil rights area, only "prevailing parties" are entitled to an award of attorney's fees. The term " 'prevailing party' has the same general meaning under 20 U.S.C. § 1415(e)(4)(B) and 42 U.S.C. § 1988," *Combs v. School Bd. of Rockingham County,* 15 F.3d 357, 360 (4th Cir.1994), and IDEA permits parents to recover attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)).

■ Thomas contends that she is entitled to an award of attorney's fees because she is a "prevailing party" under the Fourth Circuit's interpretation of that term. *See S–1 & S–2 v. State Board of Educ. of North Carolina,* 21 F.3d 49 (4th Cir.1994) ("A person may not be a 'prevailing party' . . . except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought.") *(en banc ) (per curiam )* (adopting the opinion of Wilkinson, J., dissenting, 6 F.3d 160, 168–72 (4th Cir.1993)) (interpreting *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). The Fourth Circuit has never evaluated a parent's request for attorney's fees under IDEA when the parent has been a defendant. Thomas argues that as a defendant, she should be deemed a "prevailing party" pursuant to 20 U.S.C. § 1415(e)(4)(b) because she has successfully resisted a change in the status quo which was sought by the Board. *See Smith v. Roher,* 954 F.Supp. 359, 363–64 (D.D.C.1997) (awarding attorney's fees to parent/defendants in IDEA case which became moot after five years of litigation). *See also Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597, 603 (4th Cir.1997) (explicating "prevailing party" standards applicable to plaintiffs and defendants, respectively, under various fee-shifting provisions).

The Board asserts three reasons why an award of attorney's fees is inappropriate. First the Board contends that attorney's fees cannot be awarded because "the court has decided it does not have subject matter jurisdiction." *See* Board's Mem. at 2. Second, the Board contends that Thomas is not entitled to attorney's fees because she is not a "prevailing party," that is, because the case is moot and because Thomas has not "obtained at least some relief on the merits." *Id.* at 4. Third, the Board contends that Thomas is not entitled to attorney's fees because she "unreasonably protracted [the] proceedings." *Id.* at 7.

While not all of the Board's arguments are sound, I am persuaded that in the unusual posture of this case the Fourth Circuit would very likely follow the reasoning of *Jodlowski v. Valley View Community Unit Sch. Dist. # 365–U,* 109 F.3d 1250, 1253 (7th Cir.1997), and disallow an award of attorney's fees to parents who achieve only limited, preliminary procedural success in an IDEA case as Thomas has arguably achieved here.

In *Jodlowski,* as in the case at bar, the gravamen of the dispute at the administrative level was the propriety of the school district's desire to conduct a triennial evaluation of the minor child, who was an enrollee of the district. After the parents objected on various grounds to *any* evaluation and then provided "conditional" consents agreeing to limited evaluations by named individuals, *id.* at 2151–52, the school district sought a formal hearing on its request for a complete evaluation of the child. The due process hearing resulted in an order which permitted a complete evaluation to take place, albeit on some of the terms which had been insisted upon by the parents. The parents filed suit in federal court solely to recover attorney's fees incurred at the administrative level. The district court concluded that the parents were "prevailing parties" and awarded fees.

The Seventh Circuit reversed. *Id.* at 1253–54. The court closely examined the

record of the administrative proceedings and concluded that the "brighter side" of the administrative order relied upon by the parents as evidencing their status as "prevailing parties" constituted at most "a species of interim relief for which attorney's fees are not permissible." *Id.* at 1254. Moreover, the court concluded that even if the parents were properly treated as "prevailing parties," the minimal degree of success they achieved (in obtaining evaluations by *independent* evaluators) could "not carry the weight of any attorney's fees award," and that "any success ... was so insignificant that the only reasonable fee ... [was] zero, as a matter of law." *Id.* at 1255.

I am constrained to apply *Jodlowski* to the facts here. To be sure, I entirely agree with Thomas that in this case, more likely than not, the Board has purposefully gone out of its way to seek an application of a regulation, the manifest purpose of which is aimed at protecting the procedural rights of parents and their disabled children, into an offensive weapon.

The Board has disingenuously insisted throughout the proceedings that it was *required* to seek an evaluation of Colin. Of course, this is pure nonsense. To the contrary, the overwhelming common sense implication of the record here is that the Board was attempting to construct a "good defense" to Thomas's threat to seek reimbursement for the 1997–98 school year by aggressively putting on a "good offense" in the form of a demand for a due process hearing, limited to the issue of its right to insist upon reevaluations of Colin, and the consequent appeal of the ALJ's adverse decision to federal court.

It ill becomes the local educational authorities to take such facially unwarranted action under these circumstances. Unlike the facts of *Jodlowski*, in which the child attended one of the district's schools, Colin was enrolled in school pursuant to a private placement by his parent, a school where he had already spent one full school year. There is not the remotest suggestion in the record that that placement was *harmful* to him, even if, as the Board no doubt believed, it should not have to pay the costs for that placement.

Moreover, at the hearing on the motion for attorney's fees, counsel for the Board did not dispute the court's observation that Thomas's refusal to agree to an appropriate evaluation of Colin (for the purpose of assembling an appropriate IEP for 1997–98) likely would have been a complete defense to any claim for reimbursement, if one had been asserted. Thus, the conclusion seems inescapable that the Board has acted in this case in a profoundly inappropriate fashion toward a citizen of Harford County out of a misguided *litigation strategy* intended to club Thomas into submission, rather than out of some noble variation on *parens patriae,* animated by an authentic desire to do what was in Colin's best interest.

Nevertheless, the history of this case recounted above, in light of the reasoning of *Jodlowski* compels me to conclude that Thomas is not a "prevailing party" within the meaning of *S–1 & S–2.* It seems clear that, however tortured its interpretation of the regulation (and disingenuous its motives), the Board did indeed have a colorable basis for *requesting* a reevaluation and then *seeking* an administrative determination of whether it was entitled to a reevaluation upon Thomas's refusal, and then *appealing* the ALJ's adverse determination to this court as a "party aggrieved" under IDEA.

Thus, my conclusion that this court lacked subject matter jurisdiction was erroneous. *See Ridenour v. Andrews Federal Credit Union,* 897 F.2d 715, 719 (4th Cir.1990) (discussing difference between an insubstantial federal question not supporting federal subject matter jurisdiction, on the one hand, and a plaintiff's failure to state a federal claim, on the other hand). Thomas's subsequent decision to "moot" the case by waiving any claim for reimbursement has made it unnecessary (and inappropriate) for this court now to adjudicate the factual and legal questions that underlie the Board's contrived and ill-advised quest for "relief" in this case. That is to say, I cannot now rule on Thomas's motion to dismiss for failure to state a claim because such a ruling would constitute merely an advisory opinion prohibited by Article III. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). More-

over, as indicated above, it is unlikely that the Fourth Circuit would recognize such limited relief as sufficient to bestow "prevailing party" status upon a parent. Thus, under the circumstances, Thomas is not a "prevailing party" and is not, therefore, entitled to an award of attorney's fees.[3]

Accordingly, it is this 1st day of March, 1999, by the United States District Court for the District of Maryland, ORDERED

(1) That the motion for attorney's fees is DENIED; and it is further ORDERED

(2) That the Clerk TRANSMIT a copy of this Order to counsel.

3. Prompted by certain of my comments at the hearing, Thomas filed a request for leave to seek sanctions under Fed.R.Civ.P. 11. She subsequently voluntarily withdrew her request. The withdrawal of the request was appropriate.