Donna M. CLARK, Plaintiff,

v.

The ST. JOSEPH PUBLIC SCHOOL DISTRICT, Defendant.

No. 1:99–CV–319.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 25, 2000.

Nelson P. Miller, Fajen & Miller, Grand Haven, MI, for Donna M. Clark, pltf.

Suzanne P. Bartos, Plunkett & Cooney, PC, Detroit, MI, for St. Joseph Public Schools, named as "St. Joseph Public School District" on complaint, deft.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff, Donna M. Clark, alleges that Defendant, the St. Joseph Public School District, terminated her employment without just cause in breach of contract (Count I) and denied her procedural due process (Count II). On June 7 and 8, 2000, the Court conducted a bench trial in this matter. The following constitutes the Court's findings of fact and conclusions of law in accordance with FED.R.CIV.P. 52(a). In rendering findings of fact and conclusions of law, this Court has listened carefully to all the witnesses' testimony, as well as observed their demeanor at trial, and reviewed all the documentary evidence that was admitted at trial. Further, the Court has examined its contemporaneous trial notes, and the parties' trial briefs, closing statements, and proposed findings of fact and conclusions of law.[1] For the reasons state herein, the Court grants judgment in favor of the Defendant.

### Findings of Fact

Plaintiff, forty-eight years old, was employed as a bus driver since 1979. It is

---

1. Dkt ## 35, 36, 38, and 39.

undisputed that she was a good driver. The job was her livelihood and meant a great deal to her personally. According to her testimony, she was "Mrs. Clark, the bus driver." Her employment with the Defendant was covered by a Collective Bargaining Agreement ("CBA") which provided that the District would provide due process and a policy of progressive discipline. The contract also stated that the District could not terminate an employee without cause.[2] The work rules provided that an employee would be subject to "reprimand, suspension, or discharge" for refusal to comply with an immediate supervisor's instructions and insubordination.[3]

Mary Ann Rudel, her former supervisor, now retired, testified that there was an "incident" in May 1988 involving Plaintiff's attitude in which they "had it out." Plaintiff was threatened with suspension. In January 1992, Plaintiff was involved in an incident involving grabbing another employee's arm and shouting at her. At the time, Plaintiff's former husband was her supervisor. Although the incident was documented and in her personnel file, no disciplinary action was taken.

In 1993, Kathleen Soper became her supervisor.

On February 28, 1994, Soper met with Plaintiff regarding certain interactions with another driver in which the driver voiced concern with Plaintiff's attitude and hostility toward her. The personnel record documenting the conference states that during the meeting Plaintiff became very defensive and showed anger by raising her voice. Plaintiff agreed to refrain from raising her voice in any way to any employee.

In June 1995, Plaintiff received a verbal warning regarding inappropriate communication over the bus radio. The letter documenting the conversation between Soper and Plaintiff advised Plaintiff to demonstrate self control.

In March 1997, Soper suspended Plaintiff for one day for "losing control." Specifically, Plaintiff raised her voice to another employee. She admitted to acting out of emotion and frustration over several incidents that had occurred. The employee discipline report that documented the incident, which she signed, noted that she had "a repeated history of this type of emotional lack of self control. Other incidents were reported on 1/31/92, 11/7/93, 2/14/94 and 2/15/94. In two other situations, you lost your temper, raised your voice and received a subsequent reprimand from your supervisor on 2/28/94 and 7/5/95." The report stated that if she continued to exhibit this behavior in the future, she would face further discipline up to and including dismissal. The report concluded that Plaintiff was expected to not lose her temper, raise her voice, yell or scream at any St Joseph's employee and to maintain a positive and cooperative attitude.

In May 1997, Soper received a complaint from a parent who stated Plaintiff had been rude and curt with her.

In September 1997, Plaintiff received a written reprimand from Soper for insubordination arising out of an incident where she failed to obey a directive from Soper. She was informed that if her conduct continued, she would be facing additional discipline including termination. She refused to sign the disciplinary slip and responded that she felt Soper was harassing her. Plaintiff filed a grievance on the grounds that she was not disciplined in private pursuant to Article VI, section 1 of the CBA.[4] She also indicated to Dr. Watson, St. Joseph's business manager for the past

---

**2.** Agreement between the St. Joseph Public Schools and the Non–Teaching Employees Association, Art. IV, section 1 and 2.

**3.** Pl's Ex. 2, St. Joseph Public Schools Work Rules, section 2.

**4.** Section 1 provides in pertinent part: "All corrective or disciplinary actions shall be done in private."

seven years, that she believed Soper was picking on her because Soper had written on her pre-trip sheet whereas according to Plaintiff, Soper does not write on anyone else's pre-trip sheets. Upon interviewing the three drivers Plaintiff had indicated might have heard the conversation concerning the September 15 reprimand, Watson denied the grievance on the grounds that Plaintiff had been "given the reprimand in the privacy of the office, that she chose to discuss it with the door open and that [Soper] did not mention anything in the reprimand out loud for anyone to hear." Watson further stated that he reviewed several pre-trip sheets and found at least three other drivers whose pre-trip sheets had been written on by Soper. He concluded that because other drivers had received information on the pre-trip sheets similar to what Plaintiff had received, that Soper was not singling Plaintiff out.

This action arises out events that occurred during a staff meeting on April 6, 1998. Soper conducted staff meetings once a month to communicate policies and procedures. In the April 6, 1998, staff meeting, approximately twelve drivers were present. One of the issues Soper discussed involved trip time. The Plaintiff raised her hand and informed Soper that there was a written policy on this point. The next issue Soper raised involved passing school buses at the kindergarten center. She said that if a driver had to wait because the bus ahead was not moving, the driver had the option of passing the bus. According to Plaintiff, this was a change in policy. Plaintiff had concerns about the safety of this policy and raised her hand to ask a question. Cathy Holmes, another bus driver, did not raise her hand and started to ask a question. Soper indicated that discussion on the topic needed to be tabled because she had to get through the other items on the agenda. Holmes responded, "You mean we can't even ask questions?" and then was silent. Plaintiff, however, persisted in pursuing the topic. There was some testimony indicating that Plaintiff was concerned not so much with

the safety issue but was taking issue with the change in policy because she believed it was due to Soper's favoritism of another driver who has previously held up buses. Soper advised her that if she wished to discuss the policy further, she could come to her office and discuss it. Plaintiff responded that if she couldn't ask a question now she wasn't going to go to the office afterward. Soper had an agenda and wished to proceed to the remaining items that needed to be communicated. Soper responded to Plaintiff that if she didn't like the meeting she could leave. Plaintiff then stood up and started to leave. As Plaintiff headed toward the door, Soper stated that she would be written up for insubordination if she left. Plaintiff stopped, confused, turned and walked toward Soper, who had her hands up. There was testimony that Plaintiff yelled something to the effect of, "Don't touch me, don't put your hands on me." There was some sort of contact between the two women. At this point, Jaci Brenneke, a bus driver and union representative, stood up, commenting, "That's enough" and escorted Plaintiff outside.

After the meeting, Watson received a call from Brenneke. In addition he received two other calls from drivers about what had transpired at the meeting. He commented that such a response was unusual.

Later that day, Soper held a meeting with Plaintiff about her behavior in the meeting. Brenneke also attended as her union representative. Soper advised Plaintiff that she would be written up for her behavior at the meeting. Plaintiff was "stunned." The employee disciplinary report stated in pertinent part:

> On Monday 6, 1988, during a staff meeting ... you were told you could continue with any questions on a particular subject in my office after the meeting. You at this time indicated in an argumentative fashion that you would not meet in my office after the meeting

and continued to pursue an issue after being told not to. You were then excused from the meeting to prevent further confrontations. You had to be given the directive several times. As you approached the doorway on your way out, you turned and came back at me asking me if I intended to physically remove you from the meeting. You were again told that you were excused from the meeting.

Soper does not have the authority to terminate but can give information and make recommendations to Dr. Watson. Plaintiff subsequently was out sick because she was so upset about the incident.

Watson received Soper's writeup. On April 13, 1998, Watson met with Plaintiff and asked her for her side of the story. Plaintiff interrupted him and focused on whether Soper was going to apologize to her. She told Watson that she wanted an apology from Soper, in writing, or she would take further action. Watson informed her that depending on the results of the investigation, she might be terminated for insubordination for her conduct at the meeting and that he would contact her once he had completed his investigation. Watson conducted an investigation from April 6 through April 14, 1998. Plaintiff worked while Watson conducted his investigation. Watson testified that he asked Soper for a schematic of the room indicating where people had been seated. In addition to Plaintiff and Soper, he interviewed David Radtke, Brenneke, James Grandy, Rose Riggins, and Christine Lewellen.

With the exception of Plaintiff and Brenneke, the witnesses' testimony was that Plaintiff and Holmes continued to ask questions, Soper requested that questions be tabled, yet Plaintiff continued and her conduct was disruptive of the meeting. The testimony was inconsistent regarding contact between the parties.

During the May 11, 1998, meeting, he presented her with a copy of an "Employee Disciplinary Report" which stated that her behavior at the staff meeting was "insubordinate and unacceptable." He advised her that she was being discharged that day for insubordination.

Plaintiff filed a grievance with Watson, stating that it was unfair that she was disciplined when "it was Ms. Soper who was out-of-control." She further stated that "If I could relive this day, the only things I would do differently is call the police when Ms. Soper assaulted me, instead of putting my faith in you." In his response, Watson clarified that he had interviewed witnesses based on where they were positioned during the meeting. He denied the grievance on the grounds that Plaintiff's "repeated insubordination has been documented in the reprimands indicated on the 5/11/98 termination notice. On these reprimands it is clearly stated that further violations and/or inappropriate behavior on your behalf would subject you to discipline up to and including dismissal. Your actions on 4/6/98 were insubordinate and unacceptable."

On May 26, 1998, Plaintiff appealed to Assistant Superintendent Char Wenham, who also denied her grievance. Plaintiff filed for and received unemployment benefits. She is now employed, although not as a school bus driver.

### Conclusions of Law

Plaintiff alleges that she was terminated without just cause and that she was denied procedural due process because her witnesses were not interviewed. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because of the constitutional claim. With regard to the breach of contract claim, Article VI of the CBA provides that the district will maintain a policy of progressive discipline and will not discipline unreasonably. Section 2 of the CBA provides that no employee will be disciplined without just cause.

■ The question whether the termination of plaintiff's employment was in breach of contract, i.e., whether plaintiff

was discharged for cause and in compliance with applicable procedures, is for the trier of fact as long as there is a genuine factual dispute. *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 620–621, 292 N.W.2d 880 (1980).

■ Plaintiff's working environment was volatile and emotional, marked by an unusual degree of emotion, personal animosities, transitory and shifting alliances, and petty criticisms, hostilities, and complaints. Plaintiff perceived that her supervisor "wanted her gone" and that she was being harassed by her. According to her own testimony, Plaintiff's job was the most important thing in the world to her. Being so greatly invested in the job, she was both sensitive and overbearing at work. Her previous discipline revealed issues with her attitude and temperament. She repeatedly had lost her temper with both her supervisor and co-workers. Nancy Hoffman, a witness for the plaintiff, testified that it was Plaintiff's nature to be loud. According to Kathy Holmes, also a witness for the Plaintiff, Plaintiff lost her temper when provoked. Watson, who knew Plaintiff since he arrived, was aware of her behavior with others and that she had "lost her temper" on different occasions. The record indicates that Plaintiff had been counseled and was on notice that if her conduct continued she would be subject to further discipline including discharge.

After an extensive review of the evidence, the Court finds that Plaintiff has failed to meet her burden of showing by a preponderance of the evidence that the Defendant did not have just cause to terminate her. Plaintiff's behavior, coupled with her previous disciplinary history, constitutes just cause. In so concluding, the Court considered and found credible the following testimony. According to Nancy Hoffman, a witness for the Plaintiff, Plaintiff persisted in questioning Soper after Soper had said that if she had questions she should come into her office to discuss

them. Rose Riggins, a defense witness, testified that Plaintiff persisted in speaking after Soper made it clear that she needed to move on. Riggins' perception was that Soper was not foreclosing discussion on the topic but rather tabling it for another time and place. David Radtke, one of the drivers who had called Watson after the meeting, testified that Plaintiff's attitude was disrespectful. Ashman and Grandy also opined that her behavior was insubordinate. Christine Lewellen, who was standing near the doorway during the meeting, testified that Plaintiff raised her voice to Soper and her tone was argumentative. Paula Kroening, a witness for the Plaintiff, testified that during the exchange in the meeting between Soper and Plaintiff she kept her head down because she was embarrassed at the how the situation had gotten out of hand. Watson concluded, and the Court agrees, that Plaintiff's subjective belief that she was not disruptive or rude is not supported by the majority of witnesses' testimony. Moreover, the evidence demonstrates that Plaintiff was not singled out for discipline—Mrs. Holmes was also disciplined. The evidence adduced during trial amply supports the conclusion that Plaintiff disobeyed Soper's instruction by continuing to pursue the subject after being instructed not to and thus disrupted the meeting. The Court orders that a verdict of no cause be entered as to the Plaintiff on Count I, the breach of contract claim.

■ The Court, in an earlier motion, granted summary judgment in favor of Plaintiff on the grounds that she was denied procedural due process in her termination proceedings.[5] Because the amount of damages as to Count II, the procedural due process claim, is related to the adjudication of the breach of contract claim, the Court next considers the aspect of damages as to her constitutional claim. Plaintiff argues that she is entitled to damages because she suffered mental and emotional

5. Dkt # 29.

distress as a consequence of Defendant's denial of due process. She further asserts that she is entitled to costs and attorney fees as the prevailing party in this action and states that she will file a forthcoming motion as to their amount.

■ The Supreme Court defined the proper remedy for the denial of procedural due process in *Carey v. Piphus,* holding that the remedy for a procedural due process violation is defined by the extent of the injury that resulted from the denial of constitutionally required process. 435 U.S. 247, 263–64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The complained-of constitutional violation is the denial of procedural due process, not Plaintiff's discharge from public employment. Damages therefore must be limited to those caused by the due process violation. Defendant has presented sufficient evidence to prove Plaintiff would have been terminated even if proper due process procedures had been employed, and Plaintiff has presented no proof of particularized injury arising only from the denial of due process. The Court finds that Plaintiff was distraught over the loss of her job and the subsequent, unrelated collapse of her marriage, not the denial of the full panoply of procedural protections. Where an employee would have been discharged even if she had received due process, i.e. was discharged for cause, her sole injury is the lack of process and only nominal damages are proper. *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Hopkins v. Saunders,* 199 F.3d 968, 979 (8th Cir.1999), *petition for cert. denied,* —— U.S. ——, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000). Accordingly, the Court awards the Plaintiff a nominal damage award of $1.00.

■ The Court next addresses Plaintiff's claim that she is entitled to attorney fees and costs. Section 1988 provides that, in certain specified civil-rights cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." In *Farrar,* the Supreme Court intimated that the award of attorney's fees under 42 U.S.C. § 1988 involves a two-step inquiry: first, whether the moving party is a "prevailing party"; and second, whether the moving party's victory was sufficient to justify a fee award of a particular amount. 506 U.S. at 114, 113 S.Ct. 566. A plaintiff who proves the existence of any constitutional violation, even one entitling her only to nominal damages or other minimal relief, is a prevailing party. *Id.* at 115, 113 S.Ct. 566.

■ The most critical factor in determining the amount of attorney's fees is the degree of success obtained. *Farrar,* 506 U.S. at 114, 113 S.Ct. 566; *Cramblit v. Fikse,* 33 F.3d 633, 635 (6th Cir.1994). "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566.

■ The Sixth Circuit has explicitly recognized the distinction between the "prevailing party" inquiry and the determination of a particular fee award. *See Cramblit,* 33 F.3d at 635 ("After a district court determines that a plaintiff is a prevailing party under § 1988, it must then determine what is a 'reasonable' attorney's fee."). In *Cramblit,* the Sixth Circuit addressed the issue of the reasonableness of awarding no attorney fees in a § 1988 action where the plaintiff received nominal damages of $1.00 in compensatory damages and $1.00 in punitive damages. Relying on *Farrar,* the Court held that the district court did not err in finding that a reasonable attorney's fee was no fee at all because the award of nominal damages indicated that the plaintiff had failed to prove actual, compensable injury, an essential element of her claim for monetary relief. 33 F.3d at 635–36. Because the Court in the case at bar finds that Plaintiff has failed to prove an essential element of her claim for monetary relief, Plaintiff is

not entitled to a fee award. *See Farrar,* 506 U.S. at 115, 113 S.Ct. 566; *Cramblit,* 33 F.3d. at 635–36.

An order consistent with this opinion will be entered.