NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0107n.06
Filed: February 10, 2009

07-2035

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

TAMIE M. LUTY,                                    )
                                                 )
    Plaintiff-Appellant,                         )
                                                 )
v.                                               )   ON APPEAL FROM THE UNITED
                                                 )   STATES DISTRICT COURT FOR THE
CITY OF SAGINAW and GERALD CLIFF,                )   EASTERN DISTRICT OF MICHIGAN
                                                 )
    Defendants-Appellees.                        )

Before: DAUGHTREY and KETHLEDGE, Circuit Judges; RESTANI,[*] Judge.

**PER CURIAM.** Plaintiff Tamie Luty, a former Saginaw police lieutenant, appeals from a jury verdict against her in this First Amendment retaliation and gender discrimination case, in which she claimed that the City of Saginaw and Chief of Police Gerald Cliff wrongfully demoted her because she refused to submit to polygraph testing during an internal investigation. On appeal, Luty contends that the district court erred both in permitting the introduction of hearsay evidence and in failing to give a limiting instruction concerning that evidence; in prohibiting the plaintiff from introducing evidence of prior discrimination by the defendants; by including the so-called "Mount Healthy question" on

---

[*]The Hon. Jane A. Restani, Chief Judge of the Court of International Trade, sitting by designation.

the jury verdict form; in denying the plaintiff's post-verdict motion for judgment as a matter of law; and in failing to award attorneys' fees to the plaintiff as the prevailing party in this litigation. We find no reversible error in connection with any of these issues and, therefore, affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to the plaintiff's complaint in this case trace back to a secret tape-recording of a Saginaw Police Department supervisors' meeting in June 2005 called by Chief Cliff to discuss the Saginaw City Council's decision to cut the department's annual budget. Plaintiff Luty was among the command officers at the meeting. Soon after it ended, a transcript of Chief Cliff voicing his frustration with the council's action came to light and was publicized at a subsequent city council meeting. Despite the fact that Cliff had not authorized anyone to tape-record the meeting, the transcript accurately reflected his somewhat intemperate comments at the supervisor's meeting, including his references to certain council members as "idiots" and "morons."

The unauthorized – and non-consensual – audio-taping of Chief Cliff by a fellow officer violated an order issued in 2002 by then Chief of Police Donald Pussehl and the Department's code of ethics. Accordingly, Cliff called another meeting of his command staff to discuss the matter. At that meeting, all the command officers present, including Luty, agreed to submit to investigative testing in order to clear themselves of participation in the secret taping. Specifically, they agreed to be interviewed by an independent

examiner who would give each of them a series of questionnaires or "scan tests" about their involvement in the taping incident. The examiner would then eliminate as suspects those officers who satisfactorily completed the scan tests. After sufficiently narrowing the pool of suspects, the examiner then proposed to test the remaining suspects by polygraph. The parties later disputed whether the suggestion for this investigative process arose voluntarily from the officer corps or from Chief Cliff himself. Nevertheless, it is clear that the scan test and polygraph procedure were not part of an official investigation and that participation in it was not officially compelled.

Although the plaintiff initially agreed to submit to the scan test and, if necessary, the polygraph, she later decided not to participate, explaining that it would violate both her employment contract and police department policy. The testing performed by the examiner ultimately exonerated all command personnel who had been present at the June 2005 meeting except, of course, Luty.

Apart from the scan-test procedure, Cliff ordered an internal affairs investigation into the taping incident to be conducted by Sergeants Kevin Revard and Terri Johnson-Wise. During the course of the investigation, Revard and Johnson-Wise were told that the plaintiff had secretly tape-recorded conversations with fellow officers on at least two prior occasions within months of the June 2005 incident. Former Chief Pussehl revealed that he issued his 2002 order prohibiting surreptitious audio-taping because of an incident

involving the plaintiff and former Deputy Chief Tom McGarrity. The plaintiff later admitted

during trial that she had secretly taped McGarrity in the past.

At the conclusion of the investigation, Revard and Johnson-Wise issued a report,

as follows:

> Based on statements taken from Sgt. Lively, former Chief Don Pussehl, and
> Lt. Luty's reluctance to participate in the written questionnaire, suspicion
> does point to Lt. Luty as the person who may have secretly tape recorded
> the meeting held on June 7, 2005. However, due to a lack of direct
> evidence, these investigators are unable to determine who secretly tape-
> recorded the meeting.

Cliff testified that despite the inconclusive nature of the evidence, he considered all of the

circumstantial evidence and decided that the plaintiff was responsible for the unauthorized

taping and publication of his remarks. In making this determination, Cliff testified that he

relied heavily on statements from command officers about the plaintiff's alleged past secret

tape-recording activities. Cliff also considered past comments allegedly made by Luty

during an earlier, unrelated conversation about her potential transfer from an investigative

division to a patrol division. In that conversation, Cliff testified, Luty pledged "to do

whatever she had to do to protect her position." Cliff also admitted considering the

plaintiff's failure to participate in any "vindicating effort like the rest of the commanders did,"

a clear reference to Luty's refusal to submit to the scan test or polygraph process.

As a result of the internal affairs investigation and Cliff's subsequent determination

that Luty had recorded the meeting, Cliff recommended to the city manager that Luty be

demoted to the rank of sergeant for a period of one year. City Manager Cecil Collins then demoted the plaintiff temporarily, in accordance with Chief Cliff's recommendation.

After the plaintiff was restored to her proper rank, she faced at least three more internal affairs investigations, none of which concerned the June 2005 tape-recording incident. In the first, the plaintiff filed an internal affairs complaint against Sergeant Anjanette Tuer for unprofessional conduct. The assigned investigator, Lieutenant Paul Crane, determined that although Tuer had engaged in some minor wrongful conduct, the plaintiff had engaged in several serious improprieties. As a result of Crane's findings, Cliff ordered an internal affairs investigation into the plaintiff's improper conduct. That investigation resulted in a report concluding that the plaintiff had committed several policy violations, which led to an official reprimand.

In the second investigation, a fellow officer alleged that the plaintiff had engaged in discourteous conduct. The Department reprimanded the plaintiff for a courtesy violation. However, this discipline was later overturned. Also rescinded, on procedural grounds, was a suspension that resulted from a third investigation into two separate complaints against the plaintiff charging her with creating a hostile work environment.

Based primarily upon these disciplinary actions, the plaintiff filed suit in the district court alleging gender discrimination in violation of federal and state law and retaliation in violation of the First Amendment and the Michigan Workers' Disability Compensation Act. The jury found for the defendants on all claims, and the district court entered judgment

against the plaintiff after denying her motion for judgment as a matter of law. She now appeals that judgment.

## DISCUSSION

### A. First Amendment Claims

At trial, the plaintiff claimed that the defendants demoted her because she refused to participate in the investigative testing, that her refusal constituted speech protected by the First Amendment, and that the defendants' adverse employment action therefore violated her First Amendment rights. On appeal, Luty makes two arguments based on that claim. First, she contends that the district court erred by submitting a verdict form to the jury that misapplied the governing precedent on public employee speech. Second, the plaintiff argues that the district court erred by denying her motion for judgment as a matter of law on her First Amendment retaliation claim. Because we find that the plaintiff did not engage in constitutionally protected speech, the plaintiff's appeal on these grounds must fail.

Obviously, the first question raised by the facts in this case is whether the plaintiff's conduct in refusing to undergo testing constitutes speech, protected or otherwise, given that the First Amendment's protection extends only to conduct that is "inherently expressive." Rumsfeld v. Forum for Academic & Inst. Rights, Inc., 547 U.S. 47, 66 (2006). Hence, for the First Amendment to come "into play," we must ask whether "an intent to

convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." Texas v. Johnson, 491 U.S. 397, 404 (1989) (internal brackets omitted). In the instant case, it is difficult – if not impossible – to detect any particular message emanating from Luty's conduct in refusing to undergo the scan test or polygraph. We therefore conclude that the plaintiff's First Amendment claims must fail because she did not allege or establish conduct on her part that amounted to speech.

But, even if the conduct in question could be said to constitute speech, we could not hold that it was protected by the First Amendment. As we have repeatedly held, "in determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech," we must first "ascertain whether the relevant speech addressed a matter of public concern." *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004). In addressing that question, we are guided by Connick v. Myers, 461 U.S. 138 (1983), the Supreme Court's "most instructive case on this issue." Farhat, 370 F.3d at 589. Whether an employee's speech regards a matter of public concern is determined by the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. We have refined the public concern test by emphasizing that the court must determine the focus, point, purpose, and intent of the speech in question or the "communicative purpose of the speaker." See Farhat, 370 F.3d at 592.

Speech is of public concern if it "involves issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." Id. at 590. By contrast, when the employee speech "cannot fairly be considered as relating to any matter of political, social" or community interest, government officials enjoy wide discretion in the management of their offices. See Connick, 461 U.S. at 146. It is clear in this case that the plaintiff's "speech" was of no public concern whatever and, therefore, is not protected by the First Amendment. Indeed, nothing in the record or in her brief on appeal suggests that the plaintiff's conduct concerned anything other than an internal police department matter. At trial, the plaintiff cited her employment agreement and departmental policy as her reasons for refusing the scan test or polygraph. But, although some internal police policies may be a legitimate focus of community interest, we cannot discern an issue of public concern here. Because we conclude that there is no basis for finding a First Amendment violation as a matter of law, it becomes unnecessary to address the "*Mount Healthy* question."[1] There is likewise no reason to review the plaintiff's claim that she was entitled to judgment as a matter of law on her constitutional claim, because there was no legal basis upon which to predicate a constitutional violation.

---

[1] In *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), the Supreme Court created a burden-shifting mechanism that allows a defendant employer to rebut evidence of an alleged constitutional violation by establishing, by a preponderance of the evidence, that the same adverse employment action would have occurred even the absent the constitutional violation.

## B. Evidentiary Rulings

Regarding the plaintiff's claim that the district court improperly restricted her from presenting the testimony of Brenda MacDonald and Martin Singleton at trial, purportedly to demonstrate Chief Cliff's propensity to discriminate against women, it appears that the district court excluded these witnesses because the plaintiff had failed to comply with the court's scheduling order. That order required disclosure of the name of each individual likely to have information that the plaintiff might use to support her claims, as mandated by Federal Rule of Civil Procedure 26(a)(1)(A), by June 15, 2006. The deadline for the completion of all discovery was January 31, 2007. However, the plaintiff did not identify MacDonald or Singleton as witnesses until late April 2007. Because the plaintiff failed to comply with the scheduling order, the district court was authorized to exclude their testimony under Federal Rules of Civil Procedure 16(f)(1) and 37(b)(2)(A)(I). Those rules allow the district court to "issue any just orders," including an order prohibiting the disobedient party from introducing designated matters into evidence, if a party or its attorney fails to obey a scheduling order. The rules further provide that a party's failure to identify a witness as required by Rule 26(a) precludes that party from using that witness, unless the failure is "substantially justified" or harmless. Fed. R. Civ. P. 37(c)(1).

In this case, the plaintiff made no argument that the district court exceeded its authority under Rule 16(f), nor did she argue that her failure to identify the witnesses in a

timely fashion was harmless to the defendants. Instead, she asserted that she had not learned of MacDonald's and Singleton's past allegations against Cliff until April 2007. In addition, she contended that the defendants were guilty of violating Rule 26 because they knew about the two witnesses and failed to disclose their existence in response to interrogatories, one of which requested information about persons that the defendants had "any reason to believe may have knowledge of the facts of this case or discoverable material concerning the case." The plaintiff argues that if the defendants had disclosed the information, the witnesses would have been identified and disclosed much sooner in the litigation. However, it appears that the plaintiff did not seek to compel responses to these interrogatories and, as a result, it cannot be said that the defendants' failure to respond "substantially justified" the plaintiff's late additions to the witness list. Nor can we conclude, given these circumstances, that the district court abused its discretion by not accommodating the plaintiff's late request.

The plaintiff next contends that at several points throughout the trial, the district court improperly admitted hearsay evidence or failed to instruct the jury that the evidence was received for a limited purpose. We have reviewed each of the district court's hearsay rulings and find that none constitutes a violation of the hearsay rule. Moreover, the plaintiff specifically requested a limiting instruction only once at trial and, on appeal, has failed to indicate which of the alleged hearsay statements warranted a limiting instruction. Finally, because we fail to find error by the district court in its rulings on the hearsay objections, and because the plaintiff has not identified any harm caused by the district court's refusal

to issue a limiting instruction, we conclude that there was no abuse of discretion in this regard.

## C. Attorneys' Fees

Finally, the plaintiff claims that because the jury specifically found a violation of her First Amendment rights attributable to the defendants, she should be considered a prevailing party and that she was, therefore, entitled to an award of attorneys' fees under 42 U.S.C. § 1988(b). Under that statutory provision, only the prevailing party in an action brought under 42 U.S.C. § 1983 action is entitled to collect attorney fees. A plaintiff may be considered a prevailing party if she "'succeed[s] on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 615 (6th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties, such that the defendant's behavior is modified in a way that directly benefits the plaintiff." *Id.* (internal citations, quotations, and punctuation omitted). "No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). In and of itself, "the moral satisfaction that results from any favorable statement of law cannot bestow prevailing party status." *Id.* at 112-13 (internal quotation marks and brackets omitted).

Here, of course, there is no "judgment, consent decree, or settlement against the defendant[s]" that the plaintiff could enforce. Indeed, despite the jury's (legally unsustainable) special finding that the plaintiff had suffered a constitutional violation, the jury also determined that Chief Cliff "would have undertaken the adverse employment action against plaintiff" even in the absence of the purported First Amendment violation, resulting in a verdict on the section 1983 claim in favor of the defendants. Obviously, this verdict effectively nullified the special finding and set up a complete bar to the defendants' liability. *See Ballard v. Muskogee Regional Med. Ctr.*, 238 F.3d 1250, 1253-54 (10th Cir. 2001) (discussing strikingly similar set of circumstances). Ultimately then, the jury's finding that the defendants "violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." *Farrar*, 506 U.S. at 112. Hence, there is no basis for an award of attorneys' fees to the plaintiff in this case.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.